**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF PENNSYLVANIA**

**IN THE MATTER OF PAUL GEORGE**          **NO. 2:22-MC-50**

**RESPONDENT'S HEARING MEMORANDUM**

## I.     INTRODUCTION

The hearing in this matter arises out of the Order to Show Cause issued by this Court regarding the conduct of Respondent Paul George in connection with a decision of the Office of the District Attorney ("DAO") to concede penalty phase relief on the habeas corpus claim in *Wharton v. Vaughn*, No. 01 Civ. 6049 (MSG) (E.D. Pa.).  The concession followed a remand by the Court of Appeals, which reversed the District Court's prior dismissal of Wharton's claim that his trial counsel failed to investigate and introduce evidence of his positive prison adjustment in violation of *Strickland v. Washington.*

The Petition for Rule to Show Cause focuses on statements made by the DAO in connection with the concession:

1. In its Notice of Concession, the DAO stated, "[f]ollowing [a] review of this case by the Capital Case Review Committee of the [DAO and] [by] communication with the victims' family," the DAO concedes relief, ECF 155, ¶ 9; and

2. In a follow-up brief the DAO stated it "carefully reviewed the facts and law and determined that Wharton's ineffectiveness claim fulfills the criteria

articulated in *Strickland v. Washington*, 466 U.S. 668 (1984)," ECF 162, at 3.

As we have argued and as evidence at the hearing will show, these statements were entirely true and are not grounds for attorney discipline under Rules 3.1 or 3.1(a) of the Pennsylvania Rules of Professional Conduct. Rules 3.1 and 3.3(a)(1) require a showing of a "knowing" violation. Rule 1.0(f) defines knowingly as "actual knowledge of the fact in question." Further, the charging document in this case, Petition for Rule to Show Cause, para.1, at 1, alleges an *intentional* violation of Rules 3.1 and3.3(a)(1). And this Court has ruled that "*if proven*, Disciplinary Counsel's allegations against Respondents could well require the imposition of sanctions." Order, November 30, 2023, at 2 (emphasis added).

Under the culpability standards of the Rules of Professional Conduct, there is no evidence that Mr. George, as charged in the Order to Show Cause, *intentionally* and *knowingly* violated Rules 3.1 and 3.1(a)(1), as these statements were not false or frivolous, and were not made with the intent of misleading the Court or to

intentionally or knowingly withhold relevant information. Mr. George does not dispute the Third Circuit's ruling in *Wharton v. Vaughan*, 95 F.4th 140 (3d Cir. 2024), that he could be sanctioned for *negligently* failing to search for Wharton's criminal record, a determination made under the lower culpability standard of Rule 11.

Rule 3.3(a)(1) requires proof that the lawyer intentionally withheld adverse legal authority or presented false evidence or allegations that showed a lack of candor to the court, and with the intent and knowledge of deceiving or misleading the Court. *Greenberg v. Lehocky,* 81 F.4th 386 (3d Cir. 2024). On this standard, there are no grounds for discipline. Judge Goldberg never asked the DAO what investigation and review was done and never requested a statement of the reasons, fulsome or otherwise, for the concession by its March 4, 2019 Order.  ECF 284 at 7 (citing generally to ECF 160).  And, in response to what Judge Goldberg requested, the DAO properly informed the Court that it had the power not to accept the concession and to hold a full evidentiary hearing before deciding the issue.

The standard of proof issue was recently addressed in *Office of Disciplinary Counsel v. Anonymous Attorney*, 331 A.3d 523 (Pa. 2025).  The Supreme Court ruled that a finding of attorney misconduct in a bankruptcy proceeding did not justify use of the offensive collateral estoppel doctrine in later disciplinary proceedings which are "quasi-criminal" in nature and where the burden of proof is "clear and convincing" evidence.  As we detail below, no violation can be found as there was no knowing or intentional misconduct by Mr. George with respect to the statements made to the Court.

Rule 3.1 addresses "frivolous claims." Here, the alleged frivolous legal "claim" is the assertion that Wharton was entitled to relief based on the ineffectiveness of his counsel. The Third Circuit found a prima facie case of deficient performance under *Strickland* and the Court directed the parties and court to address the issue of prejudice based on anti-mitigation evidence that the Commonwealth "*would use*" in support of the death penalty. *Wharton v. Vaughn*, 772 Fed Appx. 268, 283 (3d Cir. 2018) (emphasis added). *See also Willams v. Beard,* 637 F.3d 195, 227

(3d Cir. 2011) (the trial, appeal, post-conviction, and habeas record must be considered on the issues of mitigation and anti-mitigation evidence).

Under this instruction, Mr. George reviewed the death penalty hearing, all post-conviction and habeas pleadings and opinions, and counsel's admittedly deficient performance.  Mr. George had no reasonable grounds to engage in a further search for evidence of criminal conduct of Wharton that an experienced and zealous prosecutor had not used.  Separately, on the issue of whether there were reasonable grounds to concede relief, Judge Goldberg's grant of a certificate of appealability on the ineffectiveness of counsel issue is dispositive. To secure a COA, there must be "a substantial showing of the denial of a constitutional right … [and a] showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529

U.S. 473, 484 (2000). *See also Chmiel*, 30 A.3d at 1190 ("[a] frivolous issue is one lacking in any basis in law or fact").[1]

Finally, and again be way of introduction, we will show that the Disciplinary Counsel's allegations, Petition to Show Cause, para 28, that the Krasner DAO has a policy and practice of never opposing a defendant's death penalty claim, and this Court's assertion at the hearing of April 24, 2024 (ECF 28, at 43) that the DAO may have withheld evidence or otherwise misled other courts when conceding habeas relief on the death penalty have no foundation in fact. *See generally,* Exhibits 1 and 2.

## II.   PROCEDURAL HISTORY AND RELEVANT FACTS

As Judge Goldberg recognized, "[f]or more than three decades the Philadelphia District Attorney's Office has zealously resisted Wharton's numerous efforts to overturn his death sentence." *Wharton v. Vaughn*, 371 F. Supp. 3d 195, 201 (E.D. Pa. 2019). The former DAO contested the ineffectiveness claim at all PCRA and habeas proceedings. *See,* Brief

---

[1] Mr. George and the DAO have further agreed to comply with the order of Judge Goldberg that in any future concessions in federal court, the DAO will provide full details of its review and investigation of the case.

of Appellee the Commonwealth of Pennsylvania at *22-25, 1999 WL 33657485 (Pa. 1999); Brief of Appellee Commonwealth of Pennsylvania at *13-16, 2002 WL 32191636 (Pa. 2002); Response to Petition for Writ of Habeas Corpus at 56-63, 01-cv-06049-MSG, ECF No. 36 (E.D. Pa. 2004); Response to Petitioner's Reply at 20-30, 01-cv-06049-MSG, ECF No. 62 (E.D. Pa. 2006).

The Third Circuit affirmed Judge Goldberg's denial of habeas relief as to all but the ineffectiveness claim. *Wharton v. Vaughn*, 722 Fed. Appx. 268. The Court remanded the case, stating that "[a]s for *Strickland's* prejudice prong, to determine whether Wharton's proffered evidence had a reasonable probability of changing at least one juror's vote, 'we must reconstruct the record and assess it anew. In so doing, we cannot merely consider the mitigation evidence that went unmentioned in the first instance; we must also take account of the anti-mitigation evidence that the Commonwealth *would have presented* to rebut the petitioner's mitigation testimony.'" *Id.* at 282-283, *quoting Williams v. Beard*, 637 F.3d 195, 227 (3d Cir. 2011) (emphasis added).

Mr. George was the designated reporter for the DAO's Capital

- 8 -

Review Committee ("CCRC"), and in the Wharton matter he reviewed the relevant evidentiary hearings, judicial rulings, briefs, and related materials, with special attention, of course, to the evidence presented at the second death penalty hearing. Mr. George provided his summary to the Committee, as any decision on a possible concession to habeas relief was that of District Attorney Krasner.

The CCRC reviewed the summary of facts, including references to the penalty hearing, post-conviction proceedings, counsel's deficient performance, and "the pros and cons of whether or not Mr. Wharton's issue had merit." *Id.* at 65-66. ECF 309, at 43, 63. This review did not reveal Mr. Wharton's escape attempt, as it had not been used by the prosecutor at the death penalty hearing, where it would have been admissible both to prove an aggravating circumstance and as rebuttal to mitigation evidence. *Id.* at 27, 40, 49-50, 61-62, and 71-72. We detail this issue further, *infra,* at **xx** .

The Committee was also informed of the contacts with the family that were made by the DAO Victim Coordinator, Heather Wames. She

informed Reverend David Hart that DAO was reviewing the death penalty and that there might be a re-sentencing hearing. Reverend Hart did not oppose the removal of the death penalty but stated that Wharton should spend his life in prison. He informed Ms. Wames that he would advise the family members of the status of the case and forward her contact information to them. ECF No 176-2. Further, and contrary to the argument made by Disciplinary Counsel, *after* District Attorney Krasner decided to concede relief, Ms. Wames informed Reverend Hart of that decision and advised him that the family would be informed of any court proceedings. *Id.*

On February 6, 2019, Max Kaufman, the Supervisor of the Federal Litigation Unit, filed the District Attorney's Office's Notice of Concession. ECF No. 155. On February 8, 2019, Kaufman and Wharton's counsel filed a joint proposed order for relief based "upon a careful and independent review of all of the parties' submissions and all prior proceedings in this matter . . ." ECF No. 156.

The District Court "decline[d] to adopt the parties' Proposed Order," stating that the Court "must make an independent

determination of the merits of the Remaining Sentencing Claim, and that I cannot do so on the current record.  However, because the Notice and the parties' Proposed Order do not sufficiently address these issues, I will give the parties the opportunity to brief them."  ECF 160, at 6-7.  The District Court directed the parties to brief two specific issues: "(A) May a Court Grant Habeas Relief Based Only on the District Attorney's Concession, or Must it Independently Evaluate the Merits of the Conceded Claim?" and "(B) Can an Independent Evaluation of the Merits of the Remaining Sentencing Claim Be Made on the Current Record?" *Id.* at 7, 12. The Court did not ask the DAO to explain the basis for the concession.  Nor did it seek disclosure of any information about what communication the DAO had with the victim's family.

In its April 3, 2019 brief (ECF 162) responding to the District Court, the DAO stated (A) "a court may, but is not bound to, accept [the DAO's] concession" and (B) "if the record is insufficient to rule on the remaining [ineffectiveness] claim, the Court can conduct an evidentiary hearing."  *Id.* at 5.  Those

answers reflected relevant law, including *Commonwealth v. Brown*, 196 A.3d 130 (Pa. 2018).  Consistent with the statement in the Notice of Concession and the remand order, the brief noted that the DAO "carefully reviewed the facts and law and determined that Wharton's ineffectiveness claim fulfills the criteria articulated in *Strickland v. Washington*, 466 U.S. 668 (1984)," ECF 162 at 3.

Thereafter, the District Court appointed the Office of Attorney General as amicus curiae.  ECF 165.  On July 22, 2019, the OAG filed a brief that identified, for the first time in any of the decades of proceedings in the Wharton case, evidence of the attempt by Wharton to escape custody from a City Hall proceeding in 1986, prior to his incarceration in the state prison system.  ECF 171, at 13-21.

### III.   DISCIPLINARY PROCEEDINGS

Disciplinary Counsel alleges (1) that Respondents "knew or should have known" that their representation that the District Attorney's Office had conducted a "careful review" prior to its proposed concession would

mislead the District Court and that it advanced an untenable legal theory," and (2) that the representations of the DAO as to its communications with the family of the victim "was intended to assure the Court that the requirements of section 3771(b) had been met." As noted, the Rules define "knowingly" as actual knowledge of the fact in question. *See* Pa. R.P.C. 1.0(f); *Greenberg v. Lehocky*, 81 F.4th 386 (3d Cir. 2024) ("knowledge" within the meaning of Pa. R. Prof'l. Conduct 8.4 requires that lawyer "actually know[] his conduct [wa]s harassing or discriminatory," or be "practically certain that it will cause harassment or discrimination"). The Rules require proof by clear and convincing evidence of knowing misrepresentations or the advancement of frivolous legal positions, a burden of proof that Disciplinary Counsel recognizes as one that requires proof that Mr. George "intentionally misled the Court." Petition For Rule to Show Cause, at 1. *See Office of Disciplinary Counsel v. Anonymous Attorney*, 331 A.3d 523.

Rule 3.1 states that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a

good faith argument for an extension, modification or reversal of existing law."  "A frivolous issue is one lacking in *any* basis in law or fact but, is distinguishable from an issue that simply lacks merit." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1190 (Pa. 2011) (emphasis in original).

Rule 3.3(a)(1) states that a "lawyer shall not knowingly … make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made . . ."  A lawyer violates Rule 3.3(a)(1) *only* if the lawyer "knowingly" made a false statement or failed to correct a knowingly false statement.

The Show Cause Petition alleges that Mr. George violated Rules 3.1 and 3.3(a)(1) by not reviewing available anti-mitigation evidence and not providing it to the District Court.  It also avers that Respondent George violated Rule 3.3(a)(1) by "leading the Court to believe that [DAO] had conducted a careful and thorough *de novo* review of all the evidence before deciding to make its concession on the merits," because Respondents "had not reviewed Mr. Wharton's prison record...." Petition, ¶ 20.

These allegations fail.  *First*, Mr. George was not aware of the escape attempt.  ECF 309, at 27, 40, 49-50, 61-62, 71-72 and, therefore, he did not make a frivolous argument or a knowingly false statement in violation of Rules 3.1 or 3.3.[2]

*Second*, with respect to the Court of Appeals instruction on remand for the district court to determine whether the evidence of Wharton's good adjustment established a reasonable probability of a different result, by reviewing both mitigation and anti-mitigation evidence, *Wharton v. Vaughn*, 722 F. App'x, at 282-84, the Court relied on *Williams v. Beard*, 637 F.3d 195, for the proposition that "we must also take account of the anti-mitigation evidence that the Commonwealth **would have presented** to rebut the petitioner's mitigation testimony." *Wharton*, 722 F. App'x at 282–83 (emphasis added).

Mr. George conducted a review that included consideration of the record of Wharton's second penalty hearing, all post-

---

[2] The fact that the DAO, as an institution, knew about the 1986 escape attempt because it prosecuted Wharton decades before, Petition at ¶ 17, is irrelevant as Mr. George did not have that knowledge when the matter was remanded several decades later.

conviction proceedings, Wharton's counsel's deficient performance, and evidence of Wharton's negative prison adjustment.  *See* ECF 309, at 43, 63, 65=66 (Tr., June 23, 2022); *see also Commonwealth v. Wharton*, 811 A.2d 978, 988 (Pa. 2002) ("The records revealed that appellant had been cited for misconduct on several occasions, at least some of which were deemed 'very serious misconducts…").

Mr. George also reasonably relied on the fact that the evidence submitted by the prosecutor who "zealously" sought the death penalty did not include the escape attempt, even though it would have established both a statutory aggravating factor and would have rebutted Wharton's general good character evidence. *See* 42 Pa.C.S. 9711(d)(9); *Commonwealth v. Thomas*, 561 A.2d 699, 708-09 (Pa. 1989) (conviction for criminal trespass was a crime of use or threat to use violence to the person); *Commonwealth v. Rolan*, 549 A.2d 553 (Pa. 1988).

Further, in none of the briefing on the ineffectiveness of counsel issue in PCRA proceedings and on the habeas petition,

did the former DAO reference that event.[3]  The Commonwealth had every incentive to present evidence of the escape attempt to secure the death penalty and its considered decision not to do so is critical to the resolution of this case.  There is no need to speculate as to the reasons that the prosecutor did not use this anti-mitigation evidence. At the Rule 11 hearing, the Deputy Attorney General stated that the escape attempt evidence was not used because it was "*not material*" to the ineffectiveness issue.  Tr. 68-71 (emphasis added). The former prosecutors determined that the escape attempt was not relevant, and that evidence was not part of the record. Therefore, Mr. George had no reason to suspect or engage in a search for the existence of anti-mitigation evidence that those prosecutors did not present.

In sum, there was a careful review under the Third Circuit's remand order that required a search for anti-mitigation evidence that the

---

[3] *See* briefing in *Commonwealth v. Wharton*, 607 A.2d 710 (Pa. 1992); *Commonwealth v. Wharton*, 665 A.2d 458 (Pa. 1995); *Commonwealth v. Wharton*, 811 A.2d 978 (Pa. 2002); *Commonwealth v. Wharton*, 961 A.2d 107 (Pa. 2008); *Wharton v. Vaughn*, 722 F. App'x 268 (3d Cir. 2018).

prosecutor "**would**" use to secure the death penalty.[4] Without some basis to believe there were other sources of anti-mitigation evidence, there was no reason for Mr. George to look outside the record to find anti-mitigation evidence. *See Rompilla v. Beard*, 545 U.S. 374 (2005) (no constitutional duty to look outside the record for mitigation evidence when there is no indication that further investigation would be fruitful).

*Third*, ethics violations cannot be based on a failure to proffer evidence in response to a request the district court did not make. Upon the submission of the Notice of Concession and April 3, 2019 brief, the District Court did not "[order] the parties to provide a *fulsome* explanation justifying the relief requested" by its March 4, 2019 Order. ECF 284 at 7 (citing generally to ECF 160) (emphasis added). Rather, the District Court directed the parties to brief two issues: "(A) May a Court Grant Habeas Relief Based Only on the District Attorney's Concession, or Must it Independently Evaluate the Merits of the Conceded Claim?" and

---

[4] Professor Bruce Green, an expert on professional conduct issues, and cited by Judge Goldberg in his Rule 11 opinion, submitted an expert report finding no violation of Rules 3.1 or 3.3(a)(1). Exhibit 7.

"(B) Can an Independent Evaluation of the Merits of the Remaining Sentencing Claim Be Made on the Current Record?" *Id.* at 7, 12. The DAO's April 3, 2019, brief in response directly addressed these questions.  ECF 162, at 5.

*Fourth,* the Petition alleges (¶ 18) that it was misleading to urge the Court to sign the proposed order accompanying the Notice of Concession, in which the Court was asked to find that, "upon [the Court's] careful and independent review of all of the parties' submissions and all prior proceedings in this matter," petitioner shall be released from custody, given a new hearing, or resentenced to life without parole.  ECF 156-1.  There is no basis to infer that the proposed order was submitted as an effort to circumvent the District Court's independent review.  The proposed order stated only that if the District Judge was satisfied with its *own* review of "the parties' submissions and all prior proceedings in this matter", it could enter the relief sought by Wharton.  The District Court was under no obligation to sign it, and the DAO correctly advised the Court in its April 3 brief that it

could hold a hearing if it felt the need to further develop the record.

The Petition further alleges that the reference in the Notice of Concession to "communication with the victims' family" may have violated Rule 3.3 as this statement "assured the Court that the requirements of [18 U.S.C.] § 3771(b) had been met" with respect to the Court's obligation "to make sure the victims' family had had an opportunity to be heard on the proposed change in Mr. Wharton's sentence." Petition, ¶ 27. The Petition alleges that since Section 3771(b) imposes obligations on the District Court, the court depends on the accuracy of information provided by the parties, *id.* at ¶ 22, but the requirements of Section 3771 were fully satisfied.

The Notice of Concession states that the concession followed "communication with the victims' family." ECF 155. The Notice does not say with whom the communications were made or how many family members were contacted or characterize what the family said in response to the DAO. In December 2018, Ms. Wames contacted Reverend Hart and informed him that the DAO was considering

- 20 -

conceding relief of the death penalty. He stated that "he did not feel a certain way about the death penalty but was adamant that [Wharton] not be released," and said he would talk to his family, including Lisa Hart, the surviving victim, and provide the coordinator's contact information. ECF 176-2, at 1-2.  In January 2019, Ms. Wames informed Reverend Hart that the DAO intended to agree to death penalty relief.  *Id.* at 2.  In response, he stated that he and his brother would like to attend the hearing.  *Id.*[5]

The District Court asserted that the statement left him with "the unmistakable impression . . . that the victims' family had agreed with the District Attorney's change of position."  ECF 284, at 36; *see also* ECF 314, at 19.  However, the statement says nothing as to whether the victims' family agreed with the concession, as it was intended only to convey that DAO's decision to first consider and ultimately to concede penalty phase relief had been communicated to the victims' family.  *See*

---

[5] As with their agreement to provide all reasons and evidence in support of any habeas concession in future cases, the DAO also apologized to the family for not contacting a victim and adopted policies intended to ensure full compliance with all laws on victim contacts.

ECF 287-1, ¶ 12.  And, as the District Court recognized, the victims' views are irrelevant to the merits of Mr. Wharton's habeas claim and the decision whether to accept or reject the DAO's concession.  ECF 284, at 8 n.3 (noting that "the victims' family's testimony has no bearing on the merits of Wharton's Sixth Amendment claim").[6]

Finally, we address the allegations that the DAO has a policy of opposing the death penalty in all post-conviction matters, that the DAO conceded relief here pursuant to that policy, and that Mr. George "intended to induce the Court to dispense with its own review of whatever anti-mitigation evidence there might be" and enter an order without conducting a hearing out of deference to the DAO's "judgment on the subject."  Petition, ¶s 28-30.  Disciplinary Counsel alleges that the DAO would have conceded Wharton's *Strickland* claim regardless of

---

[6] Mr. George acknowledges that Ms. Wames should have contacted the victim Lisa Hart, and as required by the district court, the DAO wrote a letter of apology on that matter. Further, the DAO has made it clear that such notice will be provided in any case in which there are further court proceedings that could impact the sentence.

the evidence due to the DAO's "policy or practice not to contest habeas corpus petitions challenging a death sentence."  Petition, ¶ 28.[7]

This allegation was also articulated by Judge Pappert at Respondent Winkelman's hearing where he stated that the cases submitted by Mr. George to show that he and the DAO did not agree to death penalty relief in all PCRA and habeas proceedings, were "false statements to the court." Tr., March 28, 2025, 104-107. To the contrary, as shown by Exhibit 1, and as will be addressed in detail by Mr. George at the hearing, the DAO has no policy of conceding all death penalty challenges by persons sentenced to death. On the contrary, it makes a case-by-case review of the grounds asserted and does not concede death penalty relief in cases where it determines that the legal challenge to the death penalty is without merit.  To illustrate this point, we set forth the pertinent facts in three of the five cases listed in Exhibit 1.

---

[7] At the April 24, 2024, conflict of interest hearing, this Court also asserted that Mr. George may have withheld evidence or otherwise misled other courts in conceding habeas relief on the death penalty and that it would investigate that matter. Mr. George will show that these allegations have no foundation in fact.

In *Commonwealth v. Donte Thomas*, on appeal from denial of PCRA relief on a conviction and death sentence in the Pennsylvania Supreme Court, the DAO opposed PCRA relief on the conviction and the death penalty. On the death penalty, Thoms argued that counsel was ineffective in multiple ways, including an assertion that counsel "chastis[ed] and berat[ed]the jury for its swift verdict during the guilt phase." The DAO responded that the defendant "grossly exaggerates the record" and that defense counsel simply asked "the jury to carefully deliberate sentencing and not to rush to a sentence of death." Exhibit 1.

The Supreme Court rejected all of the ineffectiveness claims. On the issue of counsel's argument, it stated that it was "Thomas' burden to prove that Trial Counsel's comments caused the jury to render a death sentence, and he has not met this burden. We therefore conclude that Thomas has failed to meet the threshold requirements for a claim of ineffective assistance of counsel, precluding relief on this issue." *Commonwealth v. Thomas,* 323 A.3d 611, 634-35 (Pa. 2024).

*    *    *    *

The DAO also opposed penalty relief in a PCRA proceeding in a matter involving Anthony Reid. Reid was convicted of three separate murders in three separate trials and therefore it is important to set forth the relationship of each case to the others to understand where the DAO opposed penalty relief and where it agreed to relief on independent legal claims.

### Case 1 – *Commonwealth v. Reid*, CP-51-CR-0700081-1989
### Decedent Neil Wilkinson (non-capital)

In 1990, Reid was convicted of murdering Neil Wilkinson and sentenced to life imprisonment. *Commonwealth v. Reid*, No. 1925 EDA 2017, 2019 WL 476717, at *1 (Pa. Super. Ct. Feb. 7, 2019). Thereafter, during the penalty phase in his other two murder cases, the Commonwealth introduced this conviction to support an aggravating circumstance.

After the DAO permitted review of the District Attorney's trial file and the Police Department's Homicide File, Reid filed a PCRA petition in state court alleging a *Brady* violation and the DAO agreed to relief. The court granted a new trial, and the charges were then withdrawn. As

we now show, the vacating of Reid's conviction for the Wilkinson

murder conviction impacted the death sentence in one of his two capital

cases, but not the other.

> **Case 2 – *Commonwealth v. Reid*, CP-51-CR- 0602521-1989
> Decedent Michael Waters (DAO has opposed penalty
> phase relief in Reid's ongoing PCRA proceeding)**

**a.  *Reid's trial for the Waters murder***

In 1990, Reid was convicted of murdering Michael Waters.

During the penalty phase, the jury found two aggravating circumstances:

(1) that Reid created a grave risk of death to individuals other than the

victim (42 Pa.C.S.A. § 9711(d)(7)), and (2) that he had a significant

history of violent felonies (42 Pa.C.S.A. § 9711(d)(9)).  The significant

history aggravator was based on Reid's prior conviction for the murder

of Neil Wilkinson (Case 1) and his conviction for *conspiracy* to murder

Mark Lisby.[8] *Commonwealth v. Reid*, 99 A.3d 470, 514 (2014) ("[T]he

Commonwealth introduced evidence of this conspiracy conviction, as

---

[8] Reid was tried twice for the murder of Mark Lisby. In the first trial, the jury convicted him of conspiracy to murder Lisby but could not reach a unanimous decision on the murder charge.  After his second trial (which had not yet occurred when Reid was convicted for the Waters murder), Reid was convicted of the murder of Lisby.

well as Appellant's conviction for the murder of Neil Wilkinson, for the purpose of establishing the aggravating circumstance of a significant history of violent felony convictions."). Significantly, the jury found no mitigating circumstances and was "required to return a sentence of death." *Commonwealth v. Reid*, 99 A.3d 470, 479 (Pa. 2014).

### b. *Reid's first PCRA claims*

Reid did not secure relief during his initial round of PCRA proceedings. *Reid*, *supra*, 99 A.3d at 521. However, after the United States Supreme Court's decision in *Williams v. Pennsylvania*, 579 U.S. 1 (2016), Reid filed a new appeal in the Pennsylvania Supreme Court seeking to relitigate the PCRA claims that had previously been denied by a Court that included former District Attorney Ronald D. Castille. The Supreme Court quashed Reid's appeal without reaching the merits of his claims. *Commonwealth v. Reid*, 240 A.3d 110 (Pa. 2020).[9]

### c. *Reid's habeas corpus petition*

---

[9] In its Brief for Appellee in that matter, the DAO did not agree to penalty phase relief and suggested a remand for an evidentiary hearing regarding Reid's claim of ineffective assistance for failure to present mitigation evidence. *Commonwealth v. Reid*, *Brief for Appellee*, 748 CAP, at 45.

- 27 -

During the above-described PCRA proceedings, Reid had an open habeas corpus petition. *Reid v. Wetzel*, 14-cv-05452. On January 5, 2022, after the Supreme Court quashed Reid's attempt to relitigate his PCRA claims, the DAO's Federal Litigation Unit and defense counsel filed a Joint Motion in federal court, wherein the Commonwealth agreed that defense counsel was ineffective at the penalty phase. *Reid v. Wetzel*, 14-cv-05452 Doc 38. The habeas court has not ruled on this joint motion and Reid's death sentence for the Waters murder remains in place.

### d. *Reid's next round of state court PCRA proceedings*

Reid was permitted to conduct a review of the Commonwealth's trial file and the Police Homicide File. Thereafter, he filed a new PCRA petition (currently pending) in which he challenged his death sentence on grounds unrelated to his prior claims of ineffective assistance of penalty phase counsel: that the overturning of the Wilkinson murder conviction (Case 1) entitled him to relief, because one of the two aggravators found by the jury—the significant history aggravator—was no longer applicable.

- 28 -

While Reid was correct in arguing that the significant history aggravating circumstance was no longer applicable, *see Commonwealth v. Goins*, 495 A.2d 527, 532–33 (Pa. 1985) (single felony conviction for a crime of violence insufficient to establish a "significant history" under § 9711(d)(9)), he had no valid claim for vacating the death penalty as the Commonwealth had proven a separate aggravator (danger to others) and the jury found no defense mitigating factors.  *See Commonwealth v. Saranchak*, 675 A.2d 268, 278 (Pa. 1996) ("Where there are no mitigating factors found and there is a finding of at least one aggravating circumstance, the sentencing court has no discretion but to impose the death penalty.").

Accordingly, consistent with its case-by-case and claim-by-claim review, the DAO agreed to habeas relief in *Wetzel v. Reid* based on trial counsel's deficient performance at the penalty hearing, but as Mr. George has accurately referenced, it opposed relief when Reid raised a separate meritless claim in state court.

### Case 3 – *Commonwealth v. Reid*, CP-51-CR-1024821-1988
### Decedent Mark Lisby (DAO agreed to penalty relief in federal court and in Reid's current PCRA proceeding)

### a. *Reid's trial for the Lisby murder*

After his convictions on Case 1 and Case 2, Reid was convicted of the murder of Mark Lisby. *Commonwealth v. Reid*, 642 A.2d 453 (Pa. 1994). During the penalty phase, the jury found one aggravating circumstance: that Reid had a significant history of violent felonies (42 Pa.C.S.A. § 9711(d)(9)). *Reid*, *supra*, 642 A.2d at 456 ("The jury found one aggravating circumstance, and no mitigating circumstances, and fixed Appellant's penalty at death."). The aggravating circumstance was Reid's significant history of violent felonies, i.e. the murders of Neil Wilkinson and Michael Waters. 642 A.2d at 463 n.12. The jury found no mitigating circumstances. 642 A.2d at 456.

### b. *Reid's first PCRA claims*

After his conviction for murdering Lisby, Reid did not secure relief during his initial round of PCRA proceedings. However, as he had done with respect to the Waters conviction, Reid sought a new appeal pursuant to *Williams v. Pennsylvania*, 579 U.S. 1 (2016). The Supreme

Court quashed Reid's appeal without reaching the merits of his claims. *Commonwealth v. Reid*, 235 A.3d 1124 (Pa. 2020).

### c. *Reid's habeas corpus petition*

During the PCRA proceedings, Reid had an open habeas corpus petition. *Reid v. Wetzel*, 14-cv-05451. On January 5, 2022, after the Supreme Court quashed Reid's attempt to relitigate his PCRA claims, the DAO's Federal Litigation Unit and defense counsel filed a Joint Motion in federal court, wherein the Commonwealth agreed that defense counsel was ineffective at the penalty phase. *Reid v. Wetzel*, 14-cv-05451 Doc 20. As with the Waters case, the habeas court has not ruled on this motion and Reid's death sentence for the Lisby murder remains in place.

### d. *Reid's next round of state court PCRA proceedings*

As he had done with respect to his conviction for the Waters murder, Reid conducted a review of the Commonwealth's trial file and the Police Homicide File for the Lisby murder. As with the Waters case, he filed a new PCRA petition challenging the Lisby conviction and his

death sentence.  This matter also remains open in the Philadelphia Court of Common Pleas.

In his new PCRA petition, Reid challenged his death sentence on grounds unrelated to his prior PCRA claims of ineffective assistance of penalty phase counsel.  He argued that the overturning of the Wilkinson murder conviction (Case 1 above) entitled him to relief, because the one aggravator found by the jury—the significant history aggravator—was no longer applicable.

The DAO did not oppose death penalty relief because, as noted above, the significant history aggravator requires *more* than one conviction involving the use or threat of violence.  *Goins*, *supra*, 495 A.2d at 532–33 (Pa. 1985).  Therefore, when the Wilkinson conviction (Case 1) was reversed and vacated, it left one qualifying prior conviction, which did not establish the significant history aggravator.

*        *        *        *

The third case is that of Lavar Brown, where Mr. George opposed death penalty relief in Brown's currently pending state court PCRA proceeding.  Like Reid, Brown was convicted of more than one murder,

- 32 -

and the relevant procedural posture of his two murder cases is set forth

below.

### Case 1 – *Commonwealth v. Brown*, CP–51–CR–0407441–2004
### Decedent Michael Richardson (non-capital)
### The RiteAid murder

### a. *Brown's conviction for the RiteAid murder*

In 2004, Brown was convicted of felony murder and sentenced to

life without parole for his involvement in the murder of Michael

Richardson, during the robbery of a RiteAid store. *Commonwealth v.*

*Brown*, 2013 WL 11267531, at *1 (Pa. Super. 2013). This conviction

would later be used to establish an aggravating circumstance after

Brown's subsequent conviction for the murder of Robert Crawford

(Case 2).

### b. *Brown's new PCRA claims*

In a PCRA proceeding before the Honorable Glenn B. Bronson,

which Brown initiated after his counsel reviewed the DAO trial file,

Brown argued for a new trial based on *Brady* violations. After review of

Brown's new claims, the DAO agreed that Brown was entitled to relief.

Before deciding Brown's claim, Judge Bronson allowed full participation by attorneys for the family of decedent Richardson, as amici, in opposition to Brown's claim. All sides submitted lengthy briefs and provided the PCRA court with hundreds of pages of exhibits. Although the court was willing to hold an evidentiary hearing, all sides, including the attorneys for the decedent's family, agreed that the matter could be decided on materials already submitted. Judge Bronson then conducted a full and independent review of these submissions and awarded Brown a new trial. At all times during these proceedings, the DAO informed the court that it believed Brown to be guilty of the RiteAid murder and intended to retry him.

### c. *King's Bench review of the PCRA court's decision*

Judge Bronson's ruling is now the subject of a King's Bench review in the Supreme Court on the question of what procedures a PCRA court must follow in cases in which the Commonwealth provides reasons and concedes relief for the petitioner. *Commonwealth v. Brown*, No. 32 EM 2023. Two aspects of this review are relevant to the instant proceedings: (1) whether the DAO agreed to relief in this matter in order

to undermine Brown's death penalty in his capital case (Case 2), and (2) whether the DAO correctly informed the Supreme Court that Judge Bronson's Order granting relief in the RiteAid case would *not* affect Brown's capital sentence in Case 2.

As will be seen, the DAO did not concede relief in the RiteAid case to compromise Brown's capital sentence in Case 2. To the contrary, Brown's death penalty in Case 2 will remain in place even if Judge Bronson's grant of a new trial in Case 1 is affirmed in the King's Bench proceedings as Brown's Case 2 jury found a separate aggravator (danger to others) and no mitigators. *Commonwealth v. Brown*, 987 A.2d 699, 704-05 (Pa. 2009).

### Case 2 - *Commonwealth v. Brown*, CP-51-CR-0208091-2004 Decedent Robert Crawford (DAO has opposed penalty phase relief in Brown's ongoing PCRA proceeding)

### a. *Brown's conviction for the Crawford murder*

After his conviction in Case 1, Brown was convicted of the 2003 murder of Robert Crawford. At the penalty hearing, the jury found two aggravating circumstances: Brown's prior conviction for the RiteAid murder (Case 1) and danger to others. The jury found no mitigators and

imposed a death sentence. *Commonwealth v. Brown*, 987 A.2d at 703-05.

### b. *Brown's PCRA claims*

In his subsequent PCRA proceedings, Brown argued for death penalty relief based on a claim of ineffective assistance for counsel's failure to present evidence of his organic brain damage. The expert called by the defense at Brown's penalty hearing had opined that Brown "did not suffer from any sort of diminished cognitive ability." *Id*. 987 A.2d at 704. In contrast, at his PCRA proceedings, Brown offered reports from three experts who asserted that Brown suffered from organic brain damage, one of whom had conducted neuroimaging and identified physical evidence of that condition. *Commonwealth v. Brown*, 196 A.3d 130, 153–54 (Pa. 2018).[10] The PCRA court denied Brown's petition without an evidentiary hearing.

### c. *Brown's appeal from the denial of his PCRA petition*

---

[10] The Supreme Court has recognized that brain damage can be a mitigating circumstance. *See*, *e.g.*, Williams v. Taylor, 529 U.S. 362, 370 (2000); Tennard v. Dretke, 542 U.S. 274, 288 (2004); Porter v. McCollum, 558 U.S. 30, 36 (2009).

Brown appealed from the denial of PCRA relief. In response, the DAO agreed that his claim regarding counsel's failure to present evidence of organic brain damage was valid and conceded relief. *Brief for Appellee*, *Commonwealth v. Brown*, 728 CAP, at 15. The DAO also argued that it had the discretion to seek death penalty relief without showing a constitutional or statutory violation, but the Court rejected that claim, stating that once there is a final judgment in a criminal case, relief is proper only after an independent review by the courts. *Brown*, *supra*, 196 A.3d at 144. On the merits, the Court affirmed the PCRA court's ruling denying relief on this claim, determining that trial counsel had reasonably relied on their expert's opinion and could not be ineffective for having done so. *Id.* 196 A.3d at 154.

### c. *Brown's habeas corpus petition*

During the state court collateral review proceedings, Brown also had an open habeas corpus petition. *Brown v. Smeal*, 10-cv-553. On May 28, 2021, after the Supreme Court affirmed the denial of the PCRA petition, the DAO's Federal Litigation Unit and defense counsel filed a Joint Motion in federal court. Consistent with its state court assertion

that defense counsel was ineffective at the penalty phase for failing to present evidence of organic brain damage, the DAO agreed that penalty phase relief was appropriate. *Id.* Doc. 33, at 9. The habeas court has not ruled on this joint motion and Brown's death sentence for the Crawford murder remains in place.

### d. *Brown's new PCRA petition*

Based upon Judge Bronson's decision awarding him a new trial for the RiteAid murder (Case 1), Brown filed a new PCRA petition with reference to the Crawford murder. Among other guilt phase claims, he argued for penalty phase relief, because the now-vacated RiteAid conviction had been used to establish the prior murder aggravator at his penalty hearing. In response, as Mr. George has accurately referenced, since the jury found two aggravators and no mitigators, as a matter of law, even if the Supreme Court affirms Judge Bronson's decision ordering a new RiteAid trial, and even if that new trial resulted in an acquittal, there would still be one unrelated aggravator and no mitigators, necessitating a death sentence for the Crawford murder.

Therefore, there is no validity to the claim that the DAO agreed to relief in the RiteAid case to undermine Brown's death sentence.

Thus, as Mr. George has submitted, the DAO does not agree to relief regardless of the validity of the claim. As with the Reid cases, where the DAO determines that a claim is meritorious, it informs the court of its concession. Consistent with that approach, it has agreed to relief in both state and federal proceedings based on Brown's brain damage claim, but opposed relief based on his meritless RiteAid claim.

Finally, we address the issue regarding a footnote in the DAO King's Bench brief, at 8, n.2. That footnote states that the "Commonwealth does not believe that the disposition of this case [Case 1, the RiteAid case] affects the judgment in that matter [Case 2, the Crawford case] and has opposed both guilt and penalty relief in those ongoing post-conviction proceedings." *Brief*, at 8, n.2. Given the fact that the DAO had conceded penalty relief in Case 2 (on the organic brain damage issue), a question was raised as to the accuracy of that footnote. The DAO filed a Motion to amend the footnote as follows: "Brown has a pending petition for a writ of habeas corpus challenging that conviction

and sentence [in Case 2] . . .  Consistent with its position before this Court [i.e., the prior Brown litigation in the Supreme Court on the death penalty in Case 2], the Commonwealth has conceded that Brown is entitled to a new sentence based on the ineffectiveness of his sentencing counsel, though it has specified that the concession is not binding on the District Court."[11]

Mr. George did not author that brief and observes that any ambiguity in the original footnote (which is not readily apparent given its reference to "ongoing post-conviction proceedings") arises from the fact that the DAO was opposing death penalty relief in the ongoing Case 2 PCRA proceedings (arguing that the reversal of the conviction in Case 1 did not provide grounds to vacate the death penalty in Case 2), while it was conceding relief on the in the ongoing habeas proceeding in Case 2 based on the brain damage claim.  The critical point, however, for this disciplinary matter is that regardless of how the Supreme Court rules,

---

[11] The Supreme Court previously permitted the Attorney General to amend its filing (attacking Judge Bronson's ruling) to correct an allegation regarding the DAO's legal position in another death penalty case.  *See Motion of Office of Attorney General for Leave to File Corrected Reply Brief*, *Commonwealth v. Brown*, 32 EM 2023, filed 11/21/2024.

there are no grounds to separately attack the death verdict in Case 2, as the jury found another statutory aggravator, danger to others, and no mitigators.

The bottom line is that the DAO position opposing death penalty relief in the state post-conviction proceedings based on the reversal by Judge Bronson of Brown's murder conviction in Case 1 does not conflict with the position it has taken, and has always taken, with respect to the claim of ineffective failure to properly present organic brain damage in federal habeas corpus court. There is nothing in the *Brown* litigation, including the King's Bench proceedings, to suggest any wrongdoing by the DAO, much less by Paul George, who has opposed Brown's death penalty claim in PCRA proceedings on the ground that that the death sentence is not impacted, even if the grant of a new trial in Case 1 is affirmed by the Supreme Court.

\* \* \* \*

The record also rebuts any assertion that the concession of relief in Wharton on the *Strickland* claim was "frivolous." As Judge Goldberg found, the "prejudice" evidence on the *Strickland* claim, while not

sufficient to establish ineffectiveness, was sufficient to support a

Certificate of Appealability.  Thus, by definition, the COA negates any

allegation that the concession by the DAO of Wharton's claim was

without legal or factual basis. To grant a COA, a court must find that

there is "a substantial showing of the denial of a constitutional right …

[and a] showing that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were "'adequate to deserve

encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473,

484 (2000).

There is also a troubling and highly relevant history in

Philadelphia capital litigation of systemic defense counsel

ineffectiveness due in large part to the serious underfunding of

appointed counsel, as well as the lack of training and necessary support

services.  In a review of Philadelphia death sentences imposed from

1978-2017, the DAO found that *72% of 155 sentences death penalty*

*verdicts were ultimately overturned*.  In more than half the cases, all of

which preceded the Krasner Administration, the courts cited ineffective

assistance of defense counsel as a basis for overturning the death sentence.  *See* DA Krasner Statement on Death Penalty Announcement, Philadelphia District Attorney's Office (Feb. 16, 2023), https://phillyda.org/news/da-krasner-statement-on-death-penalty-announcement; Third Circuit Appeal No. 22-9001, ECF 44 (Wharton Appendix), filed 02/06/2023.

For the period 1980-2012, during which 152 of the 155 capital convictions occurred, court-appointed counsel for capital defendants were inadequately trained and had no mandated support in terms of mitigation specialists, investigators, or experts. They were compensated at a shockingly low rate, with a flat fee of $1800 to prepare the capital case and $400 per diem at trial, rates that were among the lowest for any state court system in the nation. See Report and Recommendation, Judge Benjamin Lerner, *Commonwealth v. McGarrell,* filed February 21, 2012 (Pa Supreme Cour, No. 77 EM 2001). As a result, prior to the Krasner administration, many death sentences had been set aside, either by DAO concessions or by court rulings in fully litigated cases. *See Exhibits* 2-

6.[12]

Separately, we address Disciplinary Counsel and Judge Goldberg's criticism of Respondents' invocation of an evidentiary privilege in objecting to certain of the District Court's questions at the hearing. Petition, ¶ 16. In doing so they ignored the fact that there was a substantial legal basis for the deliberative process privilege invocation, and Judge Goldberg did not dispute the basis for the privilege, let alone overrule the objection. ECF 309, at 10, 39. *See Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 853 (3d Cir. 1995) (deliberative process privilege protects confidential government deliberations); *El v. City of Pittsburgh*, No. 2:15-CV-00834-NBF, 2017 WL 3219301, at *7 (W.D. Pa. July 28, 2017), *clarified on denial of reconsideration*, No. 2:15-CV-00834-NBF, 2017 WL 4310233 (W.D. Pa. Sept. 28, 2017) ("the reasoning behind why certain determinations

---

[12] By contrast, the Defender Association, which provides counsel in 20% of capital cases under a random assignment process in Philadelphia County, assigns two highly experienced lawyers, investigators, and experts in every case. A Rand Corporation study reported that not a single Defender client received the death penalty since its representation in homicide cases started in 1991, and that Defender results in terms of conviction rates and length of sentences were far better than appointed private counsel. *See* James M. Anderson and Paul Heaton, "How Much Difference Does the Lawyer Make? The Effect of Defense Counsel on Murder Case Outcomes," 122 Yale LJ. 154 (2012).

were made" as to criminal charges was protected by deliberative process privilege and work product doctrine).  Moreover, Mr. George and Ms. Winkelman testified fully in response to the Court's questions, and it does not appear that any relevant evidence was not heard by the Court.

IV.    **CONCLUSION**

For all of the foregoing reasons the Disciplinary Complaint against Mr. George should be dismissed.

Respectfully submitted,

/s/ David Rudovsky
Counsel for Respondent Paul George