IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF PAUL GEORGE              NO. 2:22-MC-50

RESPONDENT'S POST-HEARING MEMORANDUM

## I.    Introduction

Respondent Paul George files this Post-Hearing Memorandum of Law to address issues raised at the hearing in this matter and to supplement Respondent's Hearing Memorandum.

## II.    Standards for Adjudicating Charges Made under Rules 3.1 and 3.3(a)(1)

As previously argued, Hearing Memorandum, at 3-7, Disciplinary Counsel has specifically alleged that Respondent George *intentionally* violated Rules 3.1 and 3.3, Petition, at 1 ("The question presented is whether Mr. George intentionally misled the Court on the facts and the law. . . "). Moreover, this Court has ruled that if Disciplinary Counsel's allegations are "proven," sanctions could be imposed. Order, November 30, 2023, at 2.

The Rules of Professional Conduct require a showing of a "knowing violation." This term is defined as "actual knowledge of the fact in question," Rule 1.0(f), a standard that in effect is one of intentionality. In turn, Rule 3.1 limits sanctions to assertions of "frivolous claims," i.e., those made with knowledge of the lack of any possible merit. Rule 3.3(a)(1) requires proof that the lawyer intentionally withheld adverse legal authority, presented false evidence, or otherwise intended to deceive or mislead the Court. *See Greenberg v. Lehocky*, 81 F.4th 386 (3d Cir. 2024).

The Rule 3.1 charge of the filing of "frivolous claims" fails at the outset, regardless of the standard of review, as the grant of a certificate of appealability by Judge Goldberg on the issue of prejudice under *Strickland*, is a judicial determination that the claim had possible merit and was not frivolous. Hearing Memorandum, at 5-7.  With respect to the

2

charges under Rule 3.1(a)(1), there is no showing on this record, by "clear and convincing evidence," *Office of Disciplinary Counsel v. Anonymous* Attorney, 331 A.3d 523 (Pa. 2025), that Respondent intentionally misled or deceived the District Court.  As the Third Circuit ruled in the appeal on the Rule 11 sanctions, Respondent George did not intentionally mislead or provide false information to the Court.  The Rule 11 sanctions were based on negligence, and not bad faith. *Wharton v. Superintendent, Graterford,* 95 F.4th 140,151 (3d Cir. 2024) ("The District Court did not find that they misled the court intentionally, nor do we.").[1]

**III.    Respondent Paul George Defended Death Penalty Verdicts in Five Other Death Penalty Challenges and There is no Policy, Practice or Custom in the Krasner DAO to Concede Death Penalty Relief in Every Federal Habeas Corpus or State PCRA Proceeding Regardless of the Merits of the Claim.**

In pleadings, briefs, and evidentiary hearings, Disciplinary Counsel and the Court have asserted that Respondent George (and the DAO)  have conceded death penalty relief in all federal habeas and state PCRA proceeding involving challenges to death penalty sentences, and has done so pursuant to policy, practice or custom to always concede death penalty relief in challenges by persons under penalty of death, regardless of the merits of the claim. *See, e.g., Petition for Rule to Show* Cause, para. 28 (the DAO "has been unable to identify any case in which the District Attorney's Office has defended a death penalty against a death penalty challenge over the past five years [and] Disciplinary

---

[1] We have addressed the issue of whether Mr. George deliberately filed a concession expressing a careful review with the expectation that Judge Goldberg would grant relief without an independent review of the record. Respondent's Pre-Hearing Memorandum.  The record shows that Judge Goldberg would not do so, as his Opinions and Orders response to the DAO concession of relief made clear that he "must independently evaluate the merits" of Wharton's claim.  Opinion of March 4, 2019, at 3, and the DAO agreed that an evidentiary hearing was proper.  DAO Brief, April 3, 2019, at 5.

3

counsel has suggested to counsel for Mr. George that the DAO has a policy or practice not to contest habeas corpus petitions challenging a death sentence and that the office takes some pride in its record in this regard").

At Respondent's hearing, there were questions whether Disciplinary Counsel had alleged that the DAO has a blanket policy of never opposing a request for death penalty relief. Tr. 55-57. Regardless of the precise position of Disciplinary Counsel, the record shows that Respondent George has defended death penalty verdicts in the face of meritless claims. As he testified and the filings confirm, in *Commonwealth v. Donte Thomas* (Exhibit 1; sub-Exhibit 5), George defended a death penalty verdict in the face of seven PCRA claims for relief, and neither he nor the DAO has conceded death penalty relief on any other claims in that case in state or federal court. See Sub- Exhibit 5, Commonwealth Brief on Appeal, No. 808 CAP; Opinion, 323 A.3d 611 (Pa. 2024).

Disciplinary Counsel's suggestion that the DAO will concede relief on Thomas's recently filed habeas petition, which alleges the same grounds for death penalty relief that were successfully opposed by the DAO in the PCRA proceedings, is nothing more than speculation. In the federal habeas petition, counsel for Thomas (who represented him in the state PCRA proceedings) has raised a single penalty phase issue which is identical to that litigated in state court, "chastising and belligerently insulting the jury."[2] The DAO successfully opposed that claim in state court.

---

[2] The DAO's reply to the PCRA petition made no mention of any specific claim that could be made with respect to the death penalty; rather, it made the point that there was a duty for PCRA counsel to raise all plausible claims to ward off a habeas challenge to her representation under

4

At the hearing, Judge Pappert asserted that the DAO had provided Thomas with a "blueprint" for defendant's counsel to challenge the death penalty. Tr. 101. On the contrary, the issues raised by PCRA counsel were those identified by counsel in that proceeding. *See* Petitioner's List of PCRA Claims, *Commonwealth v. Donte Thomas*, Capital Appeal Docket, filed 08/19/2022. Further, the claims were properly preserved for appeal as any default by defense counsel in not properly raising these claims would have resulted in a waiver under the Pennsylvania Supreme Court's strict "waiver" doctrine. *See, Commonwealth v. Foster*, 332 A.3d 1187, 1194, n.9 (Pa. 2025); *Commonwealth v. Bishop*, 217 A.3d 833 (Pa. 2019). The Court did not invoke the waiver doctrine and decided the claims on the merits.

As detailed in our pleadings, there are cases in which the DAO has defended the death penalty on one claim but conceded relief on an *independent claim* on which it found merit. For example, Mr. George opposed death penalty relief in defendant Lavar Brown's capital case, even after Common Pleas Judge Bronson granted a new trial on Brown's other, non-capital murder conviction. When Brown asserted that Judge Bronson's new trial order in the non-capital case required penalty phase relief in his capital case, Mr. George correctly argued that Brown's capital sentence was not affected by Judge Bronson's

---

*Martinez v. Ryan*, 566 U.S.1 (2012). That position, as explained by Mr. George, was taken to head off a possible challenge to the death sentence in federal habeas under *Martinez* based on the ineffectiveness of PCRA counsel to raise an issue of merit in state court which otherwise acts as a procedural bar to habeas relief.

   As Mr. George explained, he will not have input on the federal habeas petition as he is now a part-time attorney at the DAO and is no longer a member of the Sentencing Review Committee

5

decision in his non-capital matter. Although the new trial order undermined the validity of one of the aggravators found by his capital jury, a death penalty was still mandated because that jury found an additional, independent aggravator and no mitigating factors. Accordingly, even if the Supreme Court sustains Judge Bronson's grant of PCRA relief in the King's Bench proceeding, and the independent federal habeas claim of ineffectiveness of counsel is denied, Brown's death penalty remains in effect.[3]

On a separate issue in *Brown*, we have properly stated the central holding of the Supreme Court that rejected the DAO argument that it had the authority to concede death penalty relief for any reason, even without a showing of a constitutional or statutory violation, and that death penalty relief could only be granted on a concession by the Commonwealth based on an independent review of the record by the Court. *Commonwealth v. Brown*, 196 A.3d 130, 146 (Pa. 2018).  However, the Court did not mandate an evidentiary hearing or appointment of amicus to conduct this independent review.

**IV.** **The Relevance of the Historical Data Regarding the Successful Challenges to Death Penalty Sentences in Philadelphia by Way of Contested Claims, Concessions by the pre-Krasner DAO and Krasner DAO, the Systemic Reasons for Ineffectiveness of Counsel in Death Penalty Cases, as it Relates to the Decisions of Mr. George and the Krasner DAO in Deciding Whether to Concede or Oppose Death Penalty Relief in Federal Habeas Proceedings**

---

[3] We made the same point on other death penalty cases where Mr. George defended the death penalty at one stage on one ground, but where the DAO conceded relief at a separate stage on an entirely different ground. See Exhibit 1. And, as explained at the hearing, as a result of the DAO open-file policy and other means of proving newly discovered evidence, there have been numerous grants of relief on a new ground (e.g., ineffectiveness of counsel at the penalty phase, or a *Brady* or other constitutional violation).

6

At the hearing, Respondent George, Disciplinary Counsel, and the Court had different positions with respect to the relevance of evidence of historical data regarding death penalty relief in habeas and PCRA proceedings and the empirical data regarding fees and other resources for court appointed counsel in death penalty cases. *See, e.g.*, Exhibits 1-6, and the studies and litigation on the relationship of fees and resources on the issue of effectiveness of counsel.

We submit that our central arguments on these issues are correct. First, the historical data is relevant both to the process employed in 2018 at the start of the Krasner DAO (before the Supreme Court's ruling in *Commonwealth v. Brown*) and to show that prior DAO administrations conceded death penalty relief in many cases. Further, in those cases in which the prior DAO opposed relief, federal and state courts regularly sustained claims of ineffectiveness of counsel at the death penalty stage. Given this pattern of Philadelphia death sentences being overturned, either by former DAO concessions or judicial determinations of penalty phase ineffectiveness, there was good reason for the Krasner DAO to carefully review similar claims in the remaining capital cases.

Second, to understand Respondent's close look at death penalty challenges, it is important to consider what he and the DAO learned from the historical data and from practices and policies regarding fees and resources for court appointed counsel over several decades that led to numerous determinations that counsel failed to properly litigate the penalty phase. On these issues, there are several sets of data that are relevant. One set relates to fees paid to court appointed lawyers in Philadelphia. These fees were the lowest provided by any jurisdiction in the United States ($1800 for all pre-trial

7

investigation, preparation, motions, and related matters on both guilt and penalty phase issues, and $400/day for trial time, with no assurances of adequate funds for investigators and experts).

Relatedly, we cited a comprehensive study of all death sentence cases in which post-conviction and habeas cases were resolved during the period between 1978-2018, which showed a total of 155 death sentences, of which 112 (72%) were overturned in post-conviction or habeas proceedings (including those in which former DAOs conceded relief), leaving 45 persons remaining on death row as of 2018.  Of the 112 reversals, 74 were on ineffectiveness of counsel grounds at the penalty stage and 38 were reversed due to trial court error, prosecutorial misconduct, actual innocence, and changes in death penalty law. *See* ECF 44, Case 22-9001 (Third Circuit, filed 02/06/2023).

Moreover, a study conducted by the Rand Corporation provided strong empirical evidence that in death penalty cases in Philadelphia for the period from 1992-2012, where the defendant was represented by the Defender Association of Philadelphia, the result for the defendants were far superior to those achieved by court appointed counsel.  Starting in 1992, 20% of appointed cases were randomly assigned to the Defender, which in turn assigned two highly experience lawyers, investigators, social workers and retained experts. From 1992-2012 (and to the present date), no Defender client received a sentence of death, more were acquitted or found guilty of lesser charges, and more received less severe sentences than those represented by private counsel. *See* James Anderson & Paul Heaton, "How Much Difference Does the Lawyer Make? The Effect of Defense Counsel on Murder Case Outcomes," 122 Yale L. J. (2012).

8

This Court was largely dismissive of this evidence, but at the same time it focused on issues that were not particularly irrelevant. For example, the Court referenced the King's Bench amicus brief filed by the Attorney General, which cited some 120 cases of DAO concessions not specifically discussed by Respondent George in his submissions.  True, but hardly significant, as this list of cases included *all* post-conviction reversals, capital and non-capital, and both sentence and guilt phase relief. It also included scores of cases in which the Conviction Integrity Unit, without input from Respondent George, determined that there was sufficient merit to claims of actual innocence and/or serious constitutional error to vacate convictions in capital and non-capital cases.

There remains another significant and closely related issue. At the hearing of April 25, 2024, this Court stated that it was quite possible that Respondents George and Winkelman withheld relevant information or otherwise misled courts in other federal habeas death penalty cases and that there would be an investigation by the Court on that issue. *Id*. at 23-25 ("we haven't done our review yet, but we will [and] those notices may end up having been as misleading to those judges as the Notice of Concession was to Judge Goldberg").  Neither the Court nor Disciplinary Counsel has provided *any* evidence that such misconduct occurred in cases in which the Krasner DAO conceded death penalty relief.  That includes the cases fully discussed by Respondent (Exhibits 1-7 and his hearing testimony) and the 120 cases referenced by the Attorney General.  The records in these cases (and the judges who ruled on concessions) were fully accessible to Disciplinary Counsel and this Court, and the judges who considered concessions following the ruling in Commonwealth v. *Brown* were aware of the duty of the DAO to

provide legal grounds to support a concession and for the court to conduct an independent investigation before accepting the concession.

**V. Respondent George Does Not Dispute the Finding of the District Court and the Court of Appeals that He was Negligent in not Searching and Finding the Escape Attempt Conviction, but he did not Intentionally or Knowingly Withhold Relevant Anti-Mitigation Evidence or Intend to Mislead the Wharton Habeas Court.**

In Respondent's Hearing Memorandum and in his testimony, Mr. George set forth the reasons he did not access Wharton's criminal record and explained the process by which the District Attorney conceded relief on the claim of ineffectiveness of counsel. He explained that his review of the case for anti-mitigation evidence not of record was based primarily on his review of the second death penalty hearing. As explained, the escape attempt was known to the prosecutors seeking the death penalty and could have been admitted to show both an additional statutory aggravating factor and as rebuttal to Wharton's general evidence of good character. That these experienced and zealous prosecutors determined that the evidence was not "material" (or tactically not helpful) is highly significant in light of the Third Circuit's directive to search for anti-mitigation evidence which a reasonable prosecutor **"would use"** in arguing lack of prejudice under *Strickland*.

As we have argued, if these prosecutors chose not to use what is now claimed to be powerful anti-mitigation evidence at the hearing (and still secured a death penalty) or mention it on the appeals, post-conviction and habeas proceedings that followed over course of 30 years, there was no clear indication that a search for this evidence would be

10

productive.[4] Mr. George has made clear, however, that he does not dispute the Rule 11 findings that he was negligent in not searching Wharton's criminal record.

Mr. George further testified that the District Attorney decided to continue to concede relief in the habeas proceedings even after disclosure of the escape attempt as the jury was initially deadlocked and the defense needed only one juror to vote for life, to avoid a death penalty.   Moreover, the fact that Mr. George consulted with DA Krasner on this decision without input from the CCRC is not evidence of bad faith.  The District Attorney made clear that he was the final decision maker on death penalty concession issues and he could make those decisions with or without input from a committee or individual assistant district attorneys.  That DA Krasner formed a committee to consider these issues and to advise him did not in any legal or other way mandate such reviews.

## VI. Sanctions

We recognize that the Court may find violations of the Rule of Professional Conduct and therefore submit the following points on behalf of Mr. George. First, he has acknowledged that he should have done more to secure anti-mitigation evidence, and specifically, the conviction of Wharton for the escape attempt, and that the immediate victim in the case should have been directly notified of the DAO decisions to review the death penalty on remand and then to concede relief for Wharton.

---

[4] It is important to note as well that the facts regarding other anti-mitigation evidence of Wharton's misconducts in prison before the second death penalty hearing were known to the prosecutors, the district court and Court of Appeals. *See*, e.g., *Wharton,* 722 Fed. Appx. at 283, n.21 (listing these misconducts and "less than truthful" denials of charges of rule violations).

11

Second, he and the DAO have complied with what the Third Circuit found to be appropriate sanctions for the Rule 11 violation: an apology from DA Krasner to the four members of the victim family, and the implementation of a policy of informing Judge Goldberg with "full, balanced explanation of [the] facts" where a concession was made to habeas relief. Indeed, that policy is in effect for DAO concessions to any federal habeas court.

Third, The Third Circuit recognized that Respondents were "dedicated public servants." Over the course of his career, Mr. George has earned an excellent reputation for integrity, commitment to fair dealing with colleagues, adversaries and the Courts, and a commitment to principles of fairness in the criminal justice system, in which he has practiced for over 45 years. The letters of reference from lawyers who have worked with and know Mr. George and his high reputation in the Philadelphia legal community attest to his high level of professionalism and integrity.

Fourth, Mr. George is now in a part-time non-supervisory position at the DAO and is not involved in death penalty decisions. At age 75, he is likely to leave the DAO in the near future and is considering retirement from his long and distinguished legal career.

Accordingly, if the Court finds any violations, we respectfully submit that the discipline imposed should be a private reprimand by this Court.

Respectfully submitted,

s/David Rudovsky
Counsel for Respondent

12