# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF PENNSYLVANIA

**IN THE MATTER OF PAUL GEORGE**                    **NO. 2:22-MC-50**

## OBJECTIONS TO THE PANEL'S REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Respondent, Paul George, files these Objections to the Panel's Report and Recommendation ("Report") finding Mr. George in violation of the Pennsylvania Rules of Professional Conduct and imposing the sanction of disbarment from the federal court.

Mr. George seeks reversal of the disciplinary findings and the sanction on the grounds that both are factually and legally flawed. Under the Rules of Professional Conduct, violations of Rules 3.1 and 3.3(a)(1) require proof showing a "knowing" violation, further defined in Rule 1.0(f) as "actual knowledge of the fact in question." Disciplinary Counsel specifically alleged that Mr. George "intentionally" violated the Rules and the Panel ruled that "*if* proven, Disciplinary Counsel's allegations could well require the imposition of sanctions." Order, November 30, 2023, at 2 (emphasis added).

Accordingly, Disciplinary Counsel had the burden to prove by *clear and convincing* evidence that Mr. George knowingly or intentionally (1) misled the District Court in his submission that the District Attorney's Office had conducted a "careful review" of the issues prior to its proposed concession of death penalty relief, (2) advanced an "untenable legal theory," and (3) misled the Court in his representations as to its communications with the family of the victim.  There was no such proof. The submissions were accurate and not intended to mislead and, to

the extent that the Court had questions about the basis for concession of penalty relief, the responses by Mr. George were entirely accurate.

Moreover, the Panel erred in alleging misconduct by Mr. George that went beyond the specific allegations of the Petition for Rule to Show Cause, and which were without factual support. As we show below, the Panel focused on the positions the District Attorney's Office ("DAO") had taken in other death penalty litigation and on discovery policies the DAO has implemented in post-conviction proceedings. Having failed to show that Mr. George's single negligent act amounted to an intentional and willful violation of Rules 3.1 and 3.3(a)(1), the Panel seeks to justify the sanction of disbarment on what is essentially a new charge: that Mr. George sought to further a DAO policy to wrongfully confess error in every PCRA and federal habeas challenge to a death penalty case and to present false and misleading information to the courts to further this scheme. These extraordinary allegations are without evidentiary support.

Mr. George has expressed regret for the mistakes he made in the *Wharton* matter for which he was sanctioned by Judge Goldberg under Rule 11. The Third Circuit described Mr. George's conduct as negligence by a "hardworking public servant" that supported "mild sanctions." *Wharton v. Superintendent Graterford SCI*, 95 F.4[th] 140, 151 (3d Cir. 2024). Mr. George has complied with what the Third Circuit found to be appropriate sanctions for the Rule 11 violation: an

- 3 -

apology from DA Krasner to the four members of the victim's family, and the implementation of a policy of informing courts of the basis for any concession of relief.

Mr. George's mistakes do not establish a violation of the Rules of Professional Conduct, and they certainly do not support disbarment. Mr. George has a 48-year legal career as a public defender, private attorney, and Assistant Supervisor of the DAO Law Department, during which time he displayed exceptional legal skills and the highest level of professional ethics and honesty. At age 75, he has assumed a part-time, non-supervisory role at the DAO and he plans to retire at the end of 2025. He now faces findings that he lied under oath and is the subject of the most serious disciplinary sanction of disbarment. The Panel's Report and Recommendation should be rejected.

## II.   OBJECTIONS

1.   Disciplinary Counsel Failed to Prove that Mr. George Intentionally or Knowingly Violated the Rules of Professional Conduct by Clear and Convincing evidence.

2.   The Panel's finding that the DAO had a Policy and Practice of Conceding Death Penalty Relief in Every Post-Conviction and Habeas case was Erroneous.

3.   The Panel Excluded or Ignored Evidence Relevant to the Issue of Whether Mr. George Violated the Rules of Professional Conduct

4.   The Sanction of Disbarment is Inappropriate.

5.   The Panelists Should Not Participate on the Review of the Objections by the Full Court.

## III.   PROCEDURAL HISTORY

These disciplinary proceedings arise from the habeas litigation in *Wharton v. Vaughn* where Mr. Wharton claimed ineffective assistance of counsel at the death penalty hearing. The Third Circuit determined that counsel's failure to present statutory recognized mitigation evidence was deficient performance and remanded the case to the District Court on the issue of prejudice. *Wharton v. Vaughn*, 722 Fed. Appx. 26 (3d Cir. 2018). The District Court was instructed to "determine whether Wharton's proffered evidence had a reasonable probability of changing at least one juror's vote," [and in so doing] 'must reconstruct the record and assess it anew [to] take account of the anti-mitigation evidence that the Commonwealth *would have presented* to rebut the petitioner's mitigation testimony.'" *Id.* at 282-

283, *quoting Williams v. Beard*, 637 F.3d 195, 227 (3d Cir. 2011) (emphasis added).

On remand, Mr. George, who was the designated reporter for the DAO's Capital Case Review Committee (which advised District Attorney Lawrence Krasner on post-conviction and habeas matters involving a challenge to a death sentence), reviewed the relevant evidentiary hearings, all post-conviction and habeas pleadings and judicial rulings, and counsel's admittedly deficient performance, with special attention to the mitigation and anti-mitigation evidence presented at the 17-day death penalty hearing. *See* Rule 11 hearing, June 23, 2022, at 43, 63, 65-66, ECF 309; George hearing at 15-16; 74-75; 88-89.[1]

After reviewing these materials, Mr. George submitted a memorandum to the CCRC based on the materials he reviewed. The memorandum did not reference Wharton's escape attempt because Mr. George was not personally aware of that incident. Further, no evidence of the escape attempt had been produced at the penalty hearing, which post-dated the escape attempt, even though the escape attempt was admissible at that hearing as a statutory aggravator on the penalty question. The CCRC recommended that the DAO concede relief on the ineffectiveness claim and District Attorney Krasner decided to concede relief.

---

[1] We reference the separate disciplinary hearings for the Respondents in the disciplinary matter as the "George hearing" and the "Winkelman hearing."

-6-

On February 6, 2019, Mr. George and Ms. Winkelman filed a Notice of Concession. ECF No. 155. On February 8, 2019, they filed a joint proposed order for relief based "upon a careful and independent review of all of the parties' submissions and all prior proceedings in this matter . . . ." ECF No. 156.

The District Court "decline[d] to adopt the parties' Proposed Order," stating that the Court "must make an independent determination of the merits of the Remaining Sentencing Claim, and that I cannot do so on the current record." The District Court directed the parties to brief two issues: "(A) May a Court Grant Habeas Relief Based Only on the District Attorney's Concession, or Must it Independently Evaluate the Merits of the Conceded Claim?" and "(B) Can an Independent Evaluation of the Merits of the Remaining Sentencing Claim Be Made on the Current Record?" *Id.* at 7, 12. The Court did not ask the DAO to explain the basis for the concession. Nor did it seek disclosure of any information about what communication the DAO had with the victim's family.

In its brief, the Respondents stated that "a court may, but is not bound to, accept [the DAO's] concession" and "if the record is insufficient to rule on the remaining [ineffectiveness] claim, the court can conduct an evidentiary hearing." (ECF 162, at 5). Consistent with the Notice of Concession and the remand order, the brief noted that the DAO "carefully reviewed the facts and law and determined

-7-

that Wharton's ineffectiveness claim fulfills the criteria articulated in *Strickland v. Washington*, 466 U.S. 668 (1984)," ECF 162 at 3.

Thereafter, the District Court appointed the Office of Attorney General ("AG") as amicus curiae. The AG filed a brief that identified evidence of the attempt by Wharton to escape custody during a City Hall proceeding on another criminal matter in 1986. ECF 171, at 13-21. Following a hearing, Judge Goldberg denied relief but granted a certificate of appealability. Judge Goldberg also initiated Rule 11 proceedings with respect to the concession process and issued an Order that mandated the DAO to disclose all relevant information in any future concession of habeas relief and to send a letter of apology to the surviving victim in the homicide case.

On appeal from the Rule 11 ruling, the Court of Appeals found that Mr. George and Ms. Winkelman were "dedicated public servants," but they had been negligent in failing to discover and disclose the escape attempt. *Wharton v. Superintendent, Graterford*, 95 F.4th at 151. The Court endorsed what it considered to be corrective and modest sanctions.

The disciplinary proceedings were initiated by a Petition for Rule to Show Cause submitted by Disciplinary Counsel that alleged misconduct based on the submissions made by the Respondents on behalf of the DAO in connection with

- 8 -

the concession. The Petition alleged violations of Rules 3.1 and 3.3(a)(1) of the

Pennsylvania Rules of Professional Conduct due to the following submissions:

1. In its Notice of Concession, the DAO stated, "[f]ollowing [a] review of this case by the Capital Case Review Committee of the [DAO and] [by] communication with the victims' family," the DAO concedes relief, ECF 155, ¶ 9; and

2. In a follow-up brief the DAO stated it "carefully reviewed the facts and law and determined that Wharton's ineffectiveness claim fulfills the criteria articulated in *Strickland v. Washington*, 466 U.S. 668 (1984)," ECF 162, at 3.

The Panel then held a hearing to determine whether both Respondents would

waive any potential conflict of interest in their joint representation by their

attorneys. Following the hearing, Respondents retained separate counsel.[2]  At this

hearing, the Panel asserted that Respondents had likely withheld relevant

information or otherwise misled federal district court judges in other cases in

which the DAO had submitted concessions to habeas death penalty challenges.

Conflict Hearing, April 14, 2025, at 23-25. The Panel cited no evidence to support

these charges, but it stated that it would investigate the 12 cases in which the

Krasner DAO had conceded relief in federal habeas death penalty cases as well as

other cases in which the DAO had conceded relief in post-conviction matters.

---

[2] Undersigned counsel represents Mr. George and Eric Sitarchuk represents Ms. Winkelman.

Thereafter, the Panel conducted separate hearings for Ms. Winkelman and Mr. George. The Panel's Report and Recommendation in the George matter found violations of the Rules of Professional Conduct and recommended the disbarment of Mr. George.

## IV. ARGUMENT

### A. Disciplinary Counsel Failed to Prove that Mr. George Knowingly or Intentionally violated the Rules of Professional Conduct by Clear and Convincing Evidence.

The Rule to Show Cause alleges violation of Rules 3.1 and 3.3(a)(1), both of which address intentional or knowing misconduct by an attorney. In proceedings under the Rules of Professional Conduct, the burden of proof is on the charging party to establish the violation by clear and convincing evidence. *See Office of Disciplinary Counsel v. Anonymous Attorney*, 331 A.3d 523, 534-538 (Pa. 2025) (disciplinary counsel must present a case that is "strongly persuasive and leads to but one conclusion") (quoting *In re Lemisch*, 184 A. 72, 74 (Pa. 1936)).

The Report makes no reference to the clear and convincing standard; indeed, it is silent on burden of proof issue. In similar situations, appellate courts have vacated and remanded the case. *See, e.g., In re Adoption of C.J.L.*, 463 A.2d 1042 (Pa. Super. 1983 (in termination of parental rights cases, the burden of proof is clear and convincing evidence; the trial court did not reference that standard and case was remanded); *McDonnell v. American Leduc Petroleum*, 456 F.2d 1170 (2d

Cir. 1972) (claims of fraud and deceit require the "high quantum of proof" of clear and convincing evidence; failure of trial court to reference the burden of proof requires a remand).

More fundamentally, in this matter there was no factual basis to find a knowing or intentional violation by clear and convincing evidence. Accordingly, there is a need for a remand only if the Court determines that the violations could be found under a preponderance of the evidence standard.

**1. Rule 3.1**

Rule 3.1 addresses "frivolous claims." Here, the alleged frivolous claim is the assertion that Mr. George submitted a proposed order for relief on the frivolous legal grounds that Wharton was entitled to relief based on the ineffectiveness of his counsel. On this issue, the Third Circuit found a prima facie case of deficient performance under *Strickland* and directed the parties and the District Court to address the issue of prejudice based on anti-mitigation evidence that the Commonwealth "would use" in support of the death penalty. *Wharton v. Vaughn*, 772 Fed Appx. at 283.

The Panel found that Mr. George violated Rule 3.1 by representing to Judge Goldberg that the Court "could sign the proposed order [granting sentencing relief] without conducting an independent review of the reconstructed record." Report at

22. However, the proposed order does not make that representation. The DAO submission reads as follows:

> Upon a careful and independent review of all the parties' submissions and all prior proceedings in this matter, its hereby ORDERED that the petition for a writ of habeas corpus is granted in part, as to the sentence of death, on the ground of counsel's ineffectiveness at the second penalty hearing.

*Wharton v. Vaughn*, No. 01-6049, ECF No. 156-1.

The proposed order was premised on the practice of district courts to conduct a "careful and independent review." In *Commonwealth v. Brown*, 196 A.3d 130, 144 (Pa. 2018), the Court held that while a government's concession is entitled to "great weight," courts may accept the concession only after an independent review and a determination that the concession is supported by the record. In accord with this rule, Mr. George submitted the proposed order on the understanding that it could be accepted if it was supported by the Court's "careful and independent review." George hearing, 108–109.

To the extent that the Panel found the concession to be frivolous, there is no factual support for that proposition. Mr. George reviewed the transcript of the 17-day death penalty hearing, all post-conviction and habeas pleadings and opinions, and counsel's admittedly deficient performance. At the death penalty hearing, the prosecutor, who all agree was zealously seeking the death penalty, knew of the

escape attempt, but did not introduce it as evidence.[3]  Given that the escape attempt was not used by the death penalty prosecutor, it was understandable, though mistaken, for Mr. George not to conduct additional investigation into Wharton's criminal record.[4]  Nevertheless, Mr. George's negligent mistake in failing to uncover the escape attempt does not transform his assertion that relief was due into an intentional or knowing presentation of a frivolous claim.

Further, Judge Goldberg granted a certificate of appealability on the issue of ineffectiveness of counsel. To issue a COA, there must be "a substantial showing of the denial of a constitutional right ... [and a] showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Commonwealth v. Chmiel*, 30 A.3d 1111, 1190 (Pa. 2011) ("[a]

---

[3] At the Rule 11 hearing, the Deputy Attorney General, appearing as court-appointed amicus, stated that the escape attempt evidence was known to the former death penalty prosecutor, but that it was not used because it was "*not material*" to the ineffectiveness issue.  Rule 11 hearing, 68-71 (emphasis added).

[4] During the ensuing 30 years of post-conviction litigation, during which Wharton asserted ineffectiveness based on counsel's failure to present evidence of good conduct in the state prison, the Commonwealth did not oppose Wharton's ineffectiveness claim based on his escape attempt. *See* ECF 309, at 27,43, 63, 65, 66; and briefing in *Commonwealth v. Wharton*, 607 A.2d 710 (Pa. 1992); *Commonwealth v. Wharton*, 665 A.2d 458 (Pa. 1995); *Commonwealth v. Wharton*, 811 A.2d 978 (Pa. 2002); *Commonwealth v. Wharton*, 961 A.2d 107 (Pa. 2008); *Wharton v. Vaughn*, 722 F. App'x 268 (3d Cir. 2018). The evidence regarding Wharton's state-prison misconducts was referenced in judicial rulings. *See, e.g., Commonwealth v. Wharton*, 811 A.2d at 988 ("The records revealed that appellant had been cited for misconduct on several occasions, at least some of which were deemed very serious").

frivolous issue is one lacking in any basis in law or fact"). The Panel makes no reference to this standard or to Judge Goldberg's grant of a COA.

## 2. Rule 3.3(a)(1)

Under Rule 3.3(a)(1), Disciplinary Counsel had the burden to prove by clear and convincing evidence that Respondents knowingly or intentionally made a false statement of fact to the tribunal. The critical question is whether the attorney intentionally or knowingly withheld adverse legal authority or presented false evidence or showed a lack of candor to the court, with the intent of deceiving or misleading the Court. *See Greenberg v. Lehocky*, 81 F.4th 386 (3d Cir. 2024).

> *(a)    Mr. George did not knowingly or intentionally mislead the Court in stating that he had conducted a careful review prior to conceding relief.*

The assertion by Mr, George that the concession was made based on a "careful review" was negligent, but was neither knowingly nor intentionally false, and it was not made to mislead the Court or to withhold relevant information. *See Wharton v. Vaughn*, 95 F.4th at 151. Moreover, the submission by Mr. George suggesting that the Court accept the concession was in the same form that former Philadelphia District Attorneys had submitted where they conceded relief in death penalty cases. George hearing, 108; Exhibits 5 and 6.

Judge Goldberg did not ask the DAO what investigation and review was done, nor did he request a statement of the reasons for the concession; instead, the

Court ordered briefing on the issue of whether it could reject the concession. In response, Mr. George stated that the Court had the discretion to reject the concession and to hold a full evidentiary hearing on the issue.

In this context, the Panel's finding that Mr. George had intentionally or knowingly misled the Court in stating that the DAO had conducted a careful review of the matter was not supported by clear and convincing evidence of misconduct. *First*, the Court of Appeals instructed the district court to "take account of the anti-mitigation evidence that the Commonwealth *would have presented* to rebut the petitioner's mitigation testimony." *Wharton*, 722 F. App'x at 282–83 (emphasis added). Mr. George agrees that he was mistaken in his assumption that the death penalty prosecutor would have no reason not to present evidence of the escape attempt (which would establish an aggravating factor and to rebut Wharton's general good character evidence. *See* 42 Pa.C.S. 9711(d)(9)), and that he should have investigated any possible criminal record. George hearing, at 75, 113.

On these facts, there is no basis to find by clear and convincing evidence that Mr. George misled the District Court. *Cf. Rompilla v. Beard*, 545 U.S. 374 (2005) (no constitutional duty to look outside the record for mitigation evidence where there is no indication that further investigation would be fruitful). Further, Professor Bruce Green, an expert on professional conduct issues, whose

professional views were cited by Judge Goldberg in support of his Rule 11 findings, submitted an expert report on behalf of Mr. George in which he found no violation of Rules 3.1 or 3.3(a)(1). George Hearing, Exhibit 7.

*Second*, ethics violations cannot be based on a failure to proffer evidence in response to a request the district court did not make. Upon the submission of the Notice of Concession, the District Court did not, as it mistakenly alleged at one point, "[order] the parties to provide a *fulsome* explanation justifying the relief requested". ECF 284 at 7 (citing generally to ECF 160) (emphasis added). The District Court directed the parties to brief: "(A) May a Court Grant Habeas Relief Based Only on the District Attorney's Concession, or Must it Independently Evaluate the Merits of the Conceded Claim?" and "(B) Can an Independent Evaluation of the Merits of the Remaining Sentencing Claim Be Made on the Current Record?" *Id.* at 7, 12. The brief in response accurately addressed these questions. ECF 162, at 5.

*Third,* there is no basis to infer that the proposed Order was submitted to circumvent the District Court's independent review, as it stated only that if the Court was satisfied with its own review of "the parties' submissions and all prior proceedings in this matter," it could enter the relief sought by Wharton. Mr. George correctly advised the Court that it could hold a hearing if it determined that there was a need to further develop the record.

- 16 -

*Fourth*, the Panel's criticism of Mr. George for presenting what it termed a one-sided memorandum to the CCRC, Report, at 17-19, is misplaced. The disciplinary charges are based on what Mr. George submitted to the Court in his concession filings. His submissions to the CCRC are not grounds for the disciplinary violations.[5]

In sum, there was no clear and convincing evidence that George intentionally or knowingly misled the court in stating that the DAO had conducted a careful review prior to conceding relief.

> (b)  *Mr. George did not knowingly or intentionally mislead the Court in stating that the DAO had communications with the victims' family.*

The Panel also erred in finding a violation of Rule 3.3(a)(1) for the Notice of Concession's reference to "communication with the victims' family." The Notice of Concession states that the concession followed "communication with the victims' family." ECF 155. In December 2018, the DAO Victim-Witness Coordinator contacted Reverend Hart, the brother of the surviving victim, to inform him that the DAO was considering conceding relief of the death penalty. Reverend Hart stated that "he did not feel a certain way about the death penalty but was adamant that [Wharton] not be released," and said he would talk to his family,

---

[5] We address below the Panel's erroneous assertions that the CCRC was "designed solely to facilitate the manner in which to concede relief," and the "machinations" of the CCRC were "pursuant to the DAO's policy to concede relief in every death penalty case." Report, at 18.

including Lisa Hart, the surviving victim, and provide the coordinator's contact information. ECF 176-2, at 1-2. In January 2019, the Victim Coordinator further informed Reverend Hart that the DAO intended to agree to death penalty relief. *Id.* at 2. In response, Reverend Hart stated that he and his brother would attend the hearing. *Id.*

Mr. George has acknowledged that he should have personally ensured that the surviving victim was contacted. George hearing, at 132. Judge Goldberg sanctioned Mr. George for his failure to do so, and the District Attorney wrote letters of apology to the surviving victim and to all family members who were not notified. While Mr. George admitted he was negligent in failing to ensure that the DAO communicated directly with the surviving victim, he believed, based on his communications with the victim-witness coordinator, that family members had been given the relevant information. He did not knowingly make any false representations to the court.

The Petition for Rule to Show Cause asserts that this statement "assured the Court that the requirements of [18 U.S.C.] § 3771(b) had been met" with respect to the Court's obligation "to make sure the victims' family had had an opportunity to be heard on the proposed change in Mr. Wharton's sentence." Petition, ¶ 27. On this issue, Judge Goldberg asserted that the statement left him with "the unmistakable impression . . . that the victims' family had agreed with the District

Attorney's change of position." ECF 284, at 36. However, the filing does not state that the victims' family agreed with the concession, as it was intended only to convey that the DAO's decision to first consider and ultimately to concede penalty phase relief had been communicated to the victims' family. *See* ECF 287-1, ¶ 12. And, as the District Court recognized, the victims' views are irrelevant to the merits of Mr. Wharton's habeas claim and the decision whether to accept or reject the DAO's concession. ECF 284, at 8 n.3 (noting that "the victims' family's testimony has no bearing on the merits of Wharton's Sixth Amendment claim").

**B. The Panel's Finding that the DAO Had a Policy and Practice of Conceding Penalty Relief in Every Post Conviction and Habeas Challenge to a Death Sentence was Erroneous**

The Petition for Rule to Show Cause "suggested" that the DAO had a policy of opposing the death penalty in all post-conviction matters and that the DAO conceded relief in *Wharton* pursuant to that policy. Rule to Show Cause, ¶ 28. At the hearings and in the Report, the Panel went further, stating in advance of the disciplinary hearing that Mr. George conceded death penalty relief in all post-conviction matters and that he intentionally misled the district court in his concession filings. See Report at 18-21; 23; Winkelman hearing, at 104-107 (the claims made by Mr. George with respect to his opposition to claims for death penalty relief were "false statements to the court.").

The Panel erred in rejecting documentary evidence that Mr. George had opposed death penalty relief in death penalty cases, in failing to consider evidence regarding similar concession practices by previous DAOs and the large number of death penalties vacated in litigated cases, and in asserting that the testimony of Mr. George that he opposed death penalty relief in the five cases listed in Exhibit 1 was "mendacious."

The record shows just the opposite. For example, in *Commonwealth v. Donte Thomas*, the DAO has opposed relief at each stage, from the direct appeal through all PCRA and federal habeas proceedings. On direct appeal, Thomas presented two death penalty challenges, but the Court ruled that they were ineffective of counsel claims that had to await collateral review. *Commonwealth v. Thomas*, 54 A.3d 332, 344 (Pa. 2021). Thomas then filed a PCRA petition and an amended petition raising one of those death penalty claims. Mr. George defended both the guilt verdict and death penalty in the trial court and Supreme Court. *See* Commonwealth Brief on Appeal, *Commonwealth v. Thomas*, 323 A.3d 611 (Pa. 2024). The Supreme Court agreed with the DAO and sustained the denial of all PCRA claims. *Id.*

The Panel then suggested that the DAO would concede relief on the federal habeas petition filed by Thomas that alleges the same grounds for death penalty relief that were denied in the PCRA proceedings. George hearing, at 27-30;

Report, at 21; 58. However, consistent with its policy of not conceding relief in federal habeas on a claim that was opposed and denied in state PCRA, and consistent with the testimony of Mr. George on this issue, George hearing, at 22-23, the DAO filed an opposition to any relief for Thomas in the federal habeas matter. *Thomas v. Terra, et.al.*, 24-cv-5191, Document 19 (9/3/25), at 52.[6]

On this record, the Panel clearly erred in asserting (without references to the record) that the CCRC "was designed solely to facilitate the manner in which to concede relief, not debate whether or not to do so" and that "Mr. George was the chief architect behind the strategies employed to concede death-penalty relief." Report, at 18. As detailed, there was no evidence of any concession without a legal or factual basis. And it is not permissible to make that finding on the ground that a witness who denies any such policy or practice has testified falsely. *See* Report, at 29 (finding that Mr. George's denial of a policy or practice of conceding every post-conviction or habeas death penalty, George hearing, at 127-128, was false as

---

[6] Exhibit 1 in the George hearing (updated in Appendix 1 to the Objections) details the cases in which Mr. George opposed death penalty relief, either as to each claim made by the petitioner or as to certain claims that had no basis in law or fact. Where Mr. George opposed death penalty relief, the matter was not considered by the CCRC.

The Panel was also far wide of the mark in asserting that the DAO had provided Thomas with a "blueprint" for a successful challenge to the death penalty. George hearing, at 101. The DAO's assertion in its reply to the PCRA petition--that PCRA counsel must raise all plausible claims to avoid a waiver and habeas by alleging ineffectiveness of PCRA counsel under *Martinez v. Ryan*, 566 U.S.1 (2012). George hearing, at 23-24. *Martinez* permitted a habeas petitioner to allege ineffectiveness of PCRA counsel to overcome state procedural default.

"it is *beyond obvious* that one exists and that the CCRC is the vehicle through which it is carried out") (emphasis added).

In the same vein, the fact that there were "dozens of death-penalty post-conviction cases" brought to the CCRC, Report at 19, does not prove that the CCRC engaged in a wide-ranging practice of misleading judges. Indeed, the many cases considered by the CCRC would be fertile ground for the Panel or Disciplinary Counsel to identify cases in which DAO concessions were flawed by misleading or false factual or legal claims. Plainly, the investigation of these cases failed to reveal evidence of misconduct in concession of habeas or post-conviction relief.

It is also instructive to compare the death penalty reversal rates for the Krasner DAO and prior DAO administrations. In the pre-Krasner period, as a result of death penalty concessions or adversarial proceeding, 72% of death-penalty sentences were reversed. George hearing, at 88; DA Krasner Statement on Death Penalty Announcement, Philadelphia District Attorney's Office (Feb. 16, 2023), https://phillyda.org/news/da-krasner-statement-on-death-penalty-announcement; Third Circuit Appeal No. 22-9001, ECF 44 (Wharton Appendix), filed 02/06/2023. By comparison, the Pennsylvania Attorney General's review of the death penalty cases on which the Krasner DAO conceded relief found a

concession rate of 75%. *Commonwealth v. Brown*, No. 32 EM 2023, Petitioner's Reply Brief at 11.

As Justices on the Supreme Court of Pennsylvania have noted, these rates are so high because of "deficient performance of defense counsel in numerous Pennsylvania death-penalty cases." *Brown*, 196 A.3d at 201 (Saylor, J., dissenting) (joined by then-Justice, now-Chief Justice Debra M. Todd). Chief Justice Saylor explained that "Pennsylvania has long been on notice that leaders of national, state, and local bar associations do not believe that capital litigation is being conducted fairly and evenhandedly in the Commonwealth, not the least because of the *ad hoc* fashion by which indigent defense services are funded from the local government level." *Id.* Justice McCaffery recently echoed Chief Justice Saylor's concerns. *Commonwealth v. Anderson*, 323 A.3d 744, 762 (Pa. 2024) (McCaffery, J., concurring) ("I seriously question the death penalty's constitutionality and efficacy, given the truly dire state of capital representation in this Commonwealth.").

Mr. George was aware of systemic defense counsel ineffectiveness in Philadelphia capital litigation, due in large part to the underfunding of appointed counsel. In a review of Philadelphia death sentences imposed from 1978-2017, the DAO found that 112 of 155 death penalty verdicts were ultimately overturned. Of the 112 reversals, 74 were on ineffectiveness of counsel grounds at the penalty

stage and 38 were reversed due to trial court error, prosecutorial misconduct, actual innocence, and changes in death penalty law. *See* DA Krasner Statement on Death Penalty Announcement, Philadelphia District Attorney's Office (Feb. 16, 2023), https://phillyda.org/news/da-krasner-statement-on-death-penalty-announcement; Third Circuit Appeal No. 22-9001, ECF 44 (Wharton Appendix), filed 02/06/2023.

For the period 1980-2012, court-appointed counsel for capital defendants were compensated at a shockingly low rate, with a flat fee of $1800 to prepare the capital case and $400 per diem at trial, rates that were at the lowest level for any jurisdiction in the nation. Further, there was no mandated support in terms of mitigation specialists, investigators, or experts. *See* Report and Recommendation, Judge Benjamin Lerner, *Commonwealth v. McGarrell,* filed February 21, 2012 (Pa Supreme Court, No. 77 EM 2011).[7]

In addition, a study conducted by the Rand Corporation and published by the Yale Law Journal provided strong empirical evidence that in death penalty cases in Philadelphia for the period from 1992-2012, where the defendant was represented by the Defender Association of Philadelphia (20% of appointed cases randomly assigned, with the remaining 80% assigned private lawyers at the rates reference

---

[7] In *McGarrell*, the Supreme Court granted a petition for the exercise of Extraordinary Jurisdiction on the claim that the Philadelphia capital defense fee schedule was constitutionally inadequate and led to ineffective assistance of counsel. Judge Lerner was appointed to conduct a hearing and to issue a Report and Recommendation and he found that the compensation of court appointed capital defense lawyers was "grossly inadequate," Report at 2, and recommended a substantial increase in the compensation.

above) and where the Defender assigned two highly experience lawyers, investigators, social workers and retained experts) the conviction rates and sentences were far more favorable to Defender clients.

Among the findings were the following: from 1992-2012 (and to the present date), no Defender client received a sentence of death, more were acquitted or found guilty of lesser charges, and more received shorter sentences than defendants represented by private counsel. *See* James Anderson & Paul Heaton, "How Much Difference Does the Lawyer Make? The Effect of Defense Counsel on Murder Case Outcomes," 122 Yale L. J. 154 (2012). Given this track record, it was reasonable for the Krasner DAO to engage in a careful review of death penalty cases. The Panel was critical of the evidentiary value of this study and questioned its relevance. George hearing, at 70-71; 87-89; 91("what on earth are we talking about;" [and referencing the Rand Study in the Yale Law Journal]: "Everybody's source for news"). The Panel was dismissive of the empirical data without providing any contrary data or empirical studies.[8]

**C. The Panel's Erroneous Findings with Respect to Evidence of Death Penalty Concessions by Prior DAO and Grants of Relief on Death Sentence Challenges by State and Federal Courts**

---

[8] While Mr. George files these Objections based primarily on the Report and Recommendation, it is also noteworthy that the Panel engaged in aggressive questioning of Mr. George on both direct and cross-examination, and separately on its own initiative, including repeated interruptions of his testimony. We have no quarrel with probing and challenging questioning in a disciplinary hearing, but we ask the full Court to review the notes of testimony from this proceeding and judge whether a line between probing and demeaning accusations was crossed.

Mr. George submitted exhibits and testimony to respond to the Panel's reliance on Mr. George's actions in other death penalty cases as proof that his concession filings in *Wharton* were intentionally deceptive and that his denial of those allegations was a lie. George hearing, Exhibits, 1-6.  The Panel's response was that this evidence was irrelevant. George Hearing at 7 (George is not charged for what "he may have done or not done what officers in prior administrations did or didn't do. He is here because [the Third Circuit) found that he misled the [District] Court"); 69 ("What previous district attorneys did or didn't do with respect to death sentences is [only relevant if] like the current administration, its predecessors did not defend previously imposed death sentences.").  But the Panel cannot have it both ways: on the one hand, relying on the fact that Mr. George conceded death penalty relief in other cases as proof of an impermissible policy and, on the other hand, rejecting evidence that places that conduct into proper perspective.

Tacitly acknowledging that it had no direct evidence of misconduct, the Panel found it "beyond obvious" that there was a pattern of submissions intended to mislead courts in death penalty cases, relying on the number of cases in which this District Attorney's Office has confessed error. Report, at 18–24, 29. The record is not only barren of proof of false or misleading allegations, and the fact that a prosecutor has confessed error in a few or in many cases is, by itself, no

indication of any ethical violation in any specific case. *See Connick v. Thompson*, 563 U.S. 51, 58–63 (2011) (rejecting the argument that alleged misconduct (*Brady* violations) can be "so obvious" as to not require actual proof of the violations).

It is further well-settled that a prosecutor's duty is not just to win cases but to see that justice is done. *Berger v. United States*, 295 U.S. 78, 88 (1935) (the prosecution's interest "in a criminal prosecution is not that it shall win a case, but that justice shall be done"); *Commonwealth v. Clancy*, 192 A.3d 44, 59 (Pa. 2018) ("prosecutor's duty is to seek justice, not simply convictions"); Pa. R. Pro. Conduct 3.8 cmt. 1 ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate"); ABA Prosecution Function Standard 3-1.2(b) ("[t]he primary duty of the prosecutor is to seek justice within the bounds of the law, and not to convict"); National District Attorneys Association, National Prosecution Standards, Standard 1-1.11 (3d ed.) ("[t]he primary responsibility of a prosecutor is to seek justice").

It is with this duty in mind that Mr. George recommended that post-conviction relief be granted on valid claims. George hearing at 49–50 (Mr. George: "What I'm saying is you answer the claim that's in front of you. The Commonwealth is always the respondent. So if the defendant raises a claim and the claim doesn't have merit, I believe we've said so. If the defendant raises another claim and we believe that it does have merit" then the Commonwealth agrees to

relief). There is nothing unethical for a prosecutor to assess each habeas petition individually and to confess error where it would be unconstitutional to put the defendant to death.

As noted, the Panel stated that it would be conducting a full investigation into the issue of whether Mr. George had engaged in misconduct in any other matter. Conflict hearing, Docket No. 28, at 23–24. We assume that such an inquiry was undertaken but no evidence of misleading or inappropriate concessions was presented at the hearing. Further, a review of the records in the 12 cases referenced by the Panel (and multiple other cases of concessions) shows no such misconduct. George hearing, Exhibits 1-5.[9]

Having produced no evidence of misleading information in any case in which the Krasner DAO conceded relief (other than the disputed concession in *Wharton*), the Panel sought to support its theory by assertions made in the amicus brief filed by the Attorney General in the King's Bench case. *Commonwealth v. Brown*, No. 32 EM 2023. The AG cited some 120 cases not specifically discussed by Mr. George in his submissions involving concessions of relief. Remarkably, however, both the AG and the Panel fail to mention that this body of cases

---

[9] In *Commonwealth v. Brown*, 196 A.3d 130, 144–46 (Pa. 2018), the Court rejected a concession that was made without a statement of legal grounds for vacating a death penalty. Two Justices dissented on the grounds that there was a record that supported the concession. *Id.* at 197 (Saylor, J., dissenting). There were no findings that Mr. George withheld evidence from the trial or Supreme Court.

included cases in which the concession was made by a prior DAO, state post-conviction reversals, capital and non-capital, sentence relief and guilt phase relief cases in which the DAO Conviction Integrity Unit (not Mr. George) found grounds of innocence, and serious constitutional violations at trial that led to the reversal of convictions.

Moreover, the Panel's comments regarding the King's Bench matter are also entirely speculative. In *Brown*, the DAO concession was disputed by the Attorney General. After a full evidentiary hearing, Judge Glenn B. Bronson granted relief. Yet even before a ruling by the Supreme Court, the Panel credits the AG's arguments over those of the DAO.[10]

Finally, the record does not support the Panel's assertion that Mr. George was aiding post-conviction and habeas lawyers in their petitions for relief from death sentences. The Panel was particularly critical of the Krasner implementation of a national best-practices reform in post-conviction and habeas litigation: an "open file policy" that mandates internal review and permits defense counsel to review the DA file (and any separate Police Department homicide file) to determine whether there was evidence supportive of the defendant's claims.

---

[10] The Attorney General ventured even further by commenting on cases in post-conviction status that have not been resolved on the speculative assumption that the judges on these cases would not engage in independent review of concessions as mandated by *Commonwealth v. Brown*.

Pursuant to this policy, defense counsel have found evidence of innocence, undisclosed *Brady* material, and other evidence of official misconduct in the files of homicide detectives and prosecutors from former DAO administrations.[11] The Panel ignores the inherent values of the open file policy, including transparency and full disclosure, and asserts instead that the policy is the DAO's way of "working with petitioners to vacate their death sentences." Report, 21, n.7.

Mr. George explained that the DAO implemented an open-file discovery policy because there were "occasions where discovery had been approved by courts" and "some fairly dramatic stuff came out that hadn't been disclosed before, most saliently in the Kareem Johnson case where DNA evidence had been presented to the jury, which actually didn't exist at all." George hearing, at 33.[12] The DAO opened the files to defense counsel for a practical reason: "given the caseload of each individual ADA in the Law Division, there was simply no way for that attorney to go through all those boxes and determine what Brady material hadn't been turned over." *Id.* at 34. Open-file discovery has been recognized by the Supreme Court as an effective way of complying with *Brady* obligations. *See Strickler v. Greene*, 527 U.S. 263, 280 (1999) (use of an open-file discovery policy

---

[11] We list representative cases in Appendix II.

[12] The Pennsylvania Supreme Court ruled that the prosecutorial misconduct at Johnson's trial was so extreme that Pennsylvania's Double Jeopardy doctrine barred retrial. *Commonwealth v. Kareem Johnson*, 231 A.3d 807, 810 (Pa. 2020). The Court did so *over the opposition of the Krasner DAO.*

"may increase the efficiency and fairness of the criminal process"). The fact that the policy led to a high number of cases in which there was evidence of *Brady* violations underlines its necessity.

The Panel appears to reject concessions on the ground that the law requires an adversarial proceeding and, that when a prosecutor concedes relief, there is "no prosecutor" in the courtroom. George hearing, at 41–42, 44, 51, 63. This view conflicts with well-settled law. *See, e.g., Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025) (sustaining concession when supported by the record, even though the basis for claim was provided to the defense by the prosecutor); *Lazar v. Little*, 623 F. Supp. 3d 518, 523 (E.D. Pa. 2022) (McHugh, J.) (the "Commonwealth's concession is 'entitled to great weight' and is 'especially persuasive because in our adversarial system of adjudication, we follow the principle of party presentation'") (quoting *Sibron v. New York*, 392 U.S. 40, 58 (1968) & *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)); *Crosland v. Commonwealth of Pennsylvania*, No. 21-476, ECF 23 at 2 (E.D. Pa. June 22, 2021) (Brody, J.) ("The CIU's thorough investigation and the Commonwealth's subsequent admission is a fulfillment of the prosecutor's enduring duty to seek truth and a prime example of *doing justice*.").

## D. The Disbarment Sanction

The Panel recommended the harshest possible sanction—disbarment—on a record that shows a one-time negligent act that has already been subject to remedial action in the Rule 11 proceedings. As the Pennsylvania Supreme Court has stated, "[d]isbarment is an extreme sanction which must be imposed only in the most egregious cases." *Office of Disciplinary Counsel v. Keller*, 506 A.2d 872, 879 (Pa. 1986) (forgery, conversion and commingling of entrusted funds and use of misrepresentation to avoid detection warrants disbarment). *See also Office of Disciplinary Counsel v. Pozonsky*, 177 A.3d 830, 840 (Pa. 2018) (disbarment of Common Pleas judge who stole drugs used as evidence in his cases to feed his habit); *Office of Disciplinary Counsel v. Cappuccio*, 48 A.3d 1231, 1234–35 (Pa. 2012) (Assistant District Attorney disbarred for engaging in a string of sexual relationships with minors who trusted him in part due to his position as Chief Deputy District Attorney in Bucks County); *Office of Disciplinary Counsel v. Wrona*, 908 A.2d 1281, 1288–89 (Pa. 2006) (disbarring attorney for falsely accusing judicial officers of misconduct and doctoring transcripts and audiotapes to support those false allegations).

In recommending disbarment, the Panel asserts that Mr. George (1) "lied to Judge Goldberg about two critical facts," (2) acted to further the CCRC's implementation of a covert policy, (3) was the "chief architect of this stratagem,"

and (4) had been "dishonest throughout." *Id.* at 27–28.  Disciplinary counsel failed to prove any of these alleged facts by clear and convincing evidence.  Further, the Panel's assertion that Mr. George has taken no responsibility for his errors, *id.* at 28, is contradicted by the record. George hearing at 72, 74, 80, 104, 113, 132.

Mr. George complied with Judge Goldberg's sanctions for the Rule 11 violation: an apology from DA Krasner to the four members of the victim family, and the implementation of a policy of informing courts of the basis for any concession of relief.  At the same time, the Third Circuit, in affirming these sanctions, recognized that Mr. George and Ms. Winkelman were only negligent and were "dedicated public servants." *Wharton v. Superintendent Graterford*, 95 F.4th at 151.

Over the course of his 48-year legal career, Mr. George has earned a stellar reputation for integrity, commitment to fair dealing with colleagues, adversaries and the Courts, and a deep commitment to principles of fairness in the criminal justice system.  The letters of reference from lawyers who have worked with and know Mr. George and his high reputation in the Philadelphia legal community attest to his high level of professionalism and integrity. George hearing, Exhibit 8.

Mr. George is now in a part-time position at the DAO and is not involved in death penalty decisions. He is scheduled to leave the DAO at the end of this year and, at age 75, will be retiring from his long and distinguished legal career.  To

label Mr. George as a liar, and by disbarment, place him among the worst of the worst lawyers in our community is highly disproportionate and offends basic tenets of justice. Accordingly, if the Court finds any violations, the discipline imposed should be proportionate to those violations.

### E. The Panelists Should Not Participate in the Court's Consideration of the Objections.

Mr. George respectfully requests that the Panel members not participate in the full Court's review of the Objections. The Third Circuit has ruled that a federal judge may not sit in habeas and review the state court proceedings that same judge had conducted. *Clemmons v. Wolfe*, 377 F.3d 322, 326–28 (3d Cir. 2004). The basic principle is that judges may not hear or determine appeals of cases where they were the trial judge. *See Rice v. McKenzie*, 581 F.2d 1114, 1117 (4th Cir. 1978) ("To say the least, it would be unbecoming for a judge to sit in a United States Court of Appeals to participate in the determination of the correctness, propriety and appropriateness of what he did in the trial of the case."); Comment to ABA Model Rule for Lawyer Discipline 3 (noting that those presiding over disciplinary proceedings "conduct trials").

## V.   CONCLUSION

For the foregoing reasons, the Disciplinary Complaint against Mr. George should be dismissed; in the alternative, the disbarment sanction should be vacated,

- 34 -

and the Court should impose a sanction proportionate to the level of misconduct it

attributes to Mr. George.

Respectfully submitted,

/s/ David Rudovsky
Counsel for Respondent

Kairys, Rudovsky, Messing, Feinberg & Lin
718 Arch Street, Suite 501S
Philadelphia, PA 19106

## APPENDIX I

### Summary of Five Cases Referenced in the Objections
### Where the DAO opposed Penalty Phase Relief

This exhibit discusses five cases where the DAO has opposed a capitally

sentenced defendant's claim for penalty phase relief.

In one of these cases, the DAO has at all times opposed relief. In two others,

the DAO filed a concession of relief in the context of a federal habeas petition,

based on the defendant's ineffective assistance claims regarding the performance

of his counsel at his penalty hearing. Thereafter, when the defendants raised new,

meritless claims for death penalty relief in new state court PCRA proceedings, the

DAO *opposed* relief on those claims which means that the federal habeas courts

deny the habeas claims, the death penalty will stand.

In the other two cases, the DAO opposed relief of meritless death penalty

claims raised in state court. Later, however, when the defendants raised different

state court claims that had merit, the DAO asked the courts to grant relief.

### A.    Commonwealth v. Donte Thomas

In *Commonwealth v. Donte Thomas* i the DAO has consistently opposed

death penalty and guilt phase relief. On appeal from denial of PCRA relief on a

conviction and death sentence in the Pennsylvania Supreme Court, the DAO

opposed PCRA relief on both the conviction and the death penalty.  With respect to

the death penalty, Thomas argued that counsel was ineffective because he "chastis[ed] and berat[ed] the jury for its swift verdict during the guilt phase." *Commonwealth v. Thomas*, 323 A.3d 611, 633 (Pa. 2024). The DAO responded that the defendant "grossly exaggerates the record" and that defense counsel simply asked "the jury to carefully deliberate sentencing and not to rush to a sentence of death." *Brief for Appellee, Commonwealth v. Thomas*, No. 808 CAP (1/26/24) at 76.

The Supreme Court agreed with the Commonwealth and rejected Thomas' penalty phase ineffectiveness claims. On the issue of counsel's death penalty argument, the Court stated that it was "Thomas' burden to prove that Trial Counsel's comments caused the jury to render a death sentence, and he has not met this burden. We therefore conclude that Thomas has failed to meet the threshold requirements for a claim of ineffective assistance of counsel, precluding relief on this issue." *Thomas, supra,* 323 A.3d at 634-35.

Thereafter, Thomas pursued the same death penalty ineffectiveness claim in his federal habeas petition. *Thomas v. Terra, et.al.*, 24-cv-5191. In response, the Commonwealth continued to oppose death penalty relief on the same grounds articulated in its Supreme Court brief. *Id.* Document 19 (9/3/25), at 52.

## B.    Commonwealth v. Anthony Reid

Reid was convicted of three separate murders after three separate trials. The following summary identifies the reasons for the DAO's position on the death penalty in Reid's two capital cases (Cases Two and Three, below). In post-conviction and habeas proceedings, the DAO opposed relief where the claim was without merit and conceded death penalty relief where it determined that Reid's death penalty claim was meritorious.

### Case 1 – *Commonwealth v. Reid*, CP-51-CR-0700081-1989
### Decedent Neil Wilkinson (non-capital)

In 1990, Reid was convicted of murdering Neil Wilkinson and sentenced to life imprisonment. *Commonwealth v. Reid*, No. 1925 EDA 2017, 2019 WL 476717, at *1 (Pa. Super. Ct. Feb. 7, 2019). Thereafter, during the penalty phases in his other two murder cases, the Commonwealth introduced the Wilkinson murder conviction to support an aggravating circumstance.

After the current DAO permitted review of the District Attorney's trial file and the Police Department's Homicide File for the Wilkinson murder, Reid filed a PCRA petition in state court alleging a *Brady* violation. Upon review the DAO agreed to relief, and the court granted a new trial. The Commonwealth subsequently withdrew charges due to its inability to retry the case, a decision that Mr. George referenced in his testimony. George hearing, 35.  As is discussed

below, the vacating of the Wilkinson murder conviction impacted the death sentence in one of Reid's two capital cases, but not the other.

### Case 2 – *Commonwealth v. Reid*, CP-51-CR- 0602521-1989 Decedent Michael Waters (DAO opposed penalty phase relief in a PCRA proceeding)

#### a. *Reid's trial and capital sentence for the Waters murder*

In 1990, Reid was convicted of murdering Michael Waters. During the penalty phase, the jury found two aggravating circumstances: (1) that Reid created a grave risk of death to individuals other than the victim (42 Pa.C.S.A. § 9711(d)(7)), and (2) that he had a significant history of violent felonies (42 Pa.C.S.A. § 9711(d)(9)). The significant history aggravator was based on Reid's prior conviction for the murder of Neil Wilkinson (Case 1) and his conviction for conspiracy to murder Mark Lisby.[13] *Commonwealth v. Reid*, 99 A.3d 470, 514 (2014) ("[T]he Commonwealth introduced evidence of this conspiracy conviction, as well as Appellant's conviction for the murder of Neil Wilkinson, for the purpose of establishing the aggravating circumstance of a significant history of violent felony convictions."). Significantly, the jury found no mitigating circumstances

---

[13] Reid was tried twice for the murder of Mark Lisby. In his first trial, the jury convicted him of conspiracy to murder Lisby but could not reach a unanimous decision on the murder charge. After his second trial (which had not yet occurred when Reid was convicted for the Waters murder), Reid was convicted of murdering Lisby.

and was "required to return a sentence of death." *Commonwealth v. Reid*, 99 A.3d 470, 479 (Pa. 2014).

### b. *Reid's first PCRA claims*

Reid did not secure relief during his initial round of PCRA proceedings. *Reid, supra*, 99 A.3d at 521. However, after the decision in *Williams v. Pennsylvania*, 579 U.S. 1 (2016), Reid filed a new appeal in the Pennsylvania Supreme Court seeking to relitigate the PCRA claims that had previously been denied by a Court that included former District Attorney Ronald D. Castille. The Supreme Court quashed Reid's appeal without reaching the merits of his claims. *Commonwealth v. Reid*, 240 A.3d 110 (Pa. 2020).[14]

### c. *Reid's habeas corpus petition*

During the above-described PCRA proceedings, Reid had an open habeas corpus petition. *Reid v. Wetzel*, 14-cv-05452. On January 5, 2022, after the Supreme Court quashed Reid's attempt to relitigate his PCRA claims, the DAO's Federal Litigation Unit and defense counsel filed a Joint Motion in federal court, wherein the Commonwealth agreed that defense counsel was ineffective at the penalty phase. *Reid v. Wetzel*, 14-cv-05452 Doc 38. The habeas court has not ruled

---

[14] The DAO did not agree to penalty phase relief and instead argued that the matter should be remanded for an evidentiary hearing regarding Reid's claim of ineffective assistance for failure to present mitigation evidence. *Commonwealth v. Reid, Brief for Appellee*, 748 CAP, at 45.

on this joint motion and Reid's death sentence for the Waters murder remains in place.

#### d. *Reid's next round of state court PCRA proceedings*

Reid conducted open file review of the Commonwealth's trial file and the Police Homicide File for the Waters murder. Thereafter, he filed a PCRA petition (pending in the Philadelphia Court of Common Pleas), in which he challenged his death sentence on grounds unrelated to his prior claims of ineffective assistance of penalty phase counsel. In his new PCRA petition, Reid argued that the overturning of the Wilkinson murder conviction (Case 1) entitled him to relief, because one of the two aggravators found by the jury—the significant history aggravator—was no longer applicable.

Reid was correct in asserting that the significant history aggravating circumstance was no longer applicable, because the Commonwealth had submitted *two prior convictions* to establish that aggravator. When one of those convictions was vacated, the Commonwealth could no longer establish the significant history aggravator. *See Commonwealth v. Goins*, 495 A.2d 527, 532–33 (Pa. 1985) (single felony conviction for a crime of violence insufficient to establish a "significant history" under § 9711(d)(9)).

Nevertheless, the Commonwealth properly opposed relief on this claim, because the jury found one other aggravator (danger to others) and no mitigators.

- 41 -

By statute, if a jury finds one aggravator and no mitigators, it must impose a death sentence. *Commonwealth v. Saranchak*, 675 A.2d 268, 278 (Pa. 1996).

Accordingly, Mr. George's submission that the DAO does oppose penalty relief on a case-by-case, claim-by-claim basis is correct. Although the DAO agreed to habeas relief in *Wetzel v. Reid* on the basis of trial counsel's deficient performance, it opposed relief when Reid raised a new, meritless claim in state court.

### Case 3 – *Commonwealth v. Reid*, CP-51-CR-1024821-1988
### Decedent Mark Lisby (DAO agreed to penalty relief)

#### a. *Reid's trial for the Lisby murder*

After his convictions on Case 1 and Case 2, Reid was convicted of the murder of Mark Lisby. *Commonwealth v. Reid*, 642 A.2d 453 (Pa. 1994). During the penalty phase, the jury found one aggravating circumstance: that Reid had a significant history of violent felonies (42 Pa.C.S.A. § 9711(d)(9)) and no mitigating circumstances. *Reid, supra*, 642 A.2d at 456. The violent felonies were the murders of Neil Wilkinson (Case One) and Michael Waters (Case Two). *Id.* 642 A.2d at 456.

#### b. *Reid's first PCRA claims*

After his conviction for murdering Lisby, Reid did not secure relief during his initial round of PCRA proceedings. However, as he had done with respect to the Waters conviction, Reid sought a new appeal pursuant to *Williams v.*

- 42 -

*Pennsylvania*, 579 U.S. 1 (2016). The Supreme Court quashed Reid's appeal without reaching the merits of his claims. *Commonwealth v. Reid*, 235 A.3d 1124 (Pa. 2020).[15]

### c. *Reid's habeas corpus petition*

During his first PCRA proceeding, Reid had an open habeas corpus petition. *Reid v. Wetzel*, 14-cv-05451. On January 5, 2022, after the Supreme Court quashed Reid's attempt to relitigate his PCRA claims, the DAO's Federal Litigation Unit and defense counsel filed a Joint Motion in federal court, wherein the Commonwealth agreed that defense counsel was ineffective at the penalty phase. *Reid v. Wetzel*, 14-cv-05451 Doc 20. As with the Waters case, the habeas court has not ruled on this motion and Reid's death sentence for the Lisby murder remains in place.

### d. *Reid's next round of state court PCRA proceedings*

Reid conducted open file review of the Commonwealth's trial file and the Police Homicide File for the Lisby murder. As with the Waters case, he filed a new

---

[15] As it had done with respect to Reid's attempt to relitigate his PCRA claims in the Waters case, the DAO argued that the matter should remanded for an evidentiary hearing regarding Reid's claim of ineffective assistance for failure to present mitigation evidence. The Commonwealth also stated that the court's evidentiary ruling with respect to admissibility of the religious conversion was erroneous. *Commonwealth v. Reid, Brief for Appellee* 752 CAP, at 45.

PCRA petition challenging the Lisby conviction and his death sentence. This matter also remains open in the Philadelphia Court of Common Pleas.

In his new PCRA petition, Reid challenged his death sentence on grounds unrelated to his prior claims of ineffective assistance of penalty phase counsel. He argued that the overturning of the Wilkinson murder conviction (Case 1) entitled him to relief, because the one aggravator found by the jury—the significant history aggravator—was no longer applicable.

The Commonwealth did not oppose death penalty relief. As noted above, the "significant history" aggravator requires *more* than one conviction involving the use or threat of violence. *Goins*, *supra*, 495 A.2d at 532–33 (Pa. 1985). Therefore, when the Wilkinson conviction was vacated, it left one qualifying prior conviction, which did not establish the significant history aggravator.

## C.    Commonwealth v. Lavar Brown

As with the *Reid* cases, this is a matter where the DAO has opposed relief in one proceeding and, for independent reasons, has conceded penalty phase relief where the claim had merit.  Like Reid, Brown was convicted of more than one murder, in separate trials. And as with Reid, Mr. George provided accurate testimony when he explained that the DAO has opposed death penalty relief.  The procedural posture of Brown's two cases is set forth below.

Case 1 – *Commonwealth v. Brown*, CP–51–CR–0407441–2004
Decedent Michael Richardson (non-capital)

### The RiteAid murder

#### a. *Brown's conviction for the RiteAid murder*

In 2004, Brown was convicted of felony murder and sentenced to life without parole for his involvement in the murder of Michael Richardson, during the robbery of a RiteAid store. *Commonwealth v. Brown*, 2013 WL 11267531, at *1 (Pa. Super. 2013). This conviction would later be used to establish an aggravating circumstance after Brown's subsequent conviction for the murder of Robert Crawford (Case 2).

#### b. *Brown's new PCRA claims*

In a PCRA proceeding before the Honorable Glenn B. Bronson, which Brown initiated after defense counsel reviewed the DAO trial file for the RiteAid murder, Brown argued for a new trial based on evidence of a *Brady* violation. After review of Brown's new claims, the DAO agreed that Brown was entitled to relief.

Before deciding Brown's claim, Judge Bronson allowed full participation by attorneys for the family of decedent Richardson, as amici, in opposition to Brown's claim. All sides submitted lengthy briefs and provided the PCRA court with hundreds of pages of exhibits. Although the court was willing to hold an evidentiary hearing, all sides, including the attorneys for the decedent's family, agreed that the matter could be decided on materials already submitted. Judge

Bronson then conducted a full and independent review of these submissions and awarded Brown a new trial. At all times during these proceedings, the DAO informed the court that it believed Brown to by guilty of the RiteAid murder and intended to retry him.

### c. *King's Bench review of the PCRA court's decision*

Judge Bronson's ruling is now the subject of a King's Bench review in the Supreme Court on the question of what procedures a PCRA court must follow in cases in which the Commonwealth provides reasons and concedes relief for the petitioner. *Commonwealth v. Brown*, No. 32 EM 2023. Two aspects of this review are relevant to the instant proceedings: (1) whether the DAO agreed to relief in this matter in order to undermine Brown's death penalty in his capital case (Case 2, below), and (2) whether the DAO correctly informed the Supreme Court that Judge Bronson's Order granting relief in the RiteAid would not affect Brown's capital sentence in Case 2.

As will be seen, the DAO did not concede relief in the RiteAid case to compromise Brown's capital sentence in Case 2. To the contrary, the DAO has opposed Brown's new PCRA claim for penalty relief in his capital case (a claim based on Judge Bronson's decision), and, as will be seen, Brown's Case 2 death penalty will remain in place whether or not the Supreme Court affirms Judge Bronson's Order.

### Case 2 - *Commonwealth v. Brown*, CP-51-CR-0208091-2004
### Decedent Robert Crawford (A case where the DAO has opposed penalty phase relief in Brown's ongoing PCRA proceeding)

#### a. *Brown's conviction for the Crawford murder*

After a jury trial, Brown was convicted of the 2003 murder of Robert Crawford. At the ensuing penalty hearing, the jury found two aggravating circumstances: Brown's prior conviction for the RiteAid murder (Case 1) and danger to others. *Commonwealth v. Brown*, 987 A.2d 699, 704-05 (Pa. 2009). It found no mitigators and imposed a death sentence. *Id*. at 703.

#### b. *Brown's PCRA claims*

In his subsequent PCRA proceedings, Brown argued for death penalty relief based on a claim of ineffective assistance for counsel's failure to present evidence of his organic brain damage. The expert called by the defense at Brown's penalty hearing had opined that Brown "did not suffer from any sort of diminished cognitive ability." *Id*. 987 A.2d at 704. In contrast, at his subsequent PCRA proceedings, Brown offered reports from three experts who asserted that Brown suffered from organic brain damage, one of whom had conducted neuroimaging and identified physical evidence of that condition. *Commonwealth v. Brown*, 196

- 47 -

A.3d 130, 153–54 (Pa. 2018).[16] The PCRA court denied Brown's petition without an evidentiary hearing.

### c. *Brown's appeal from the denial of his PCRA petition*

Brown appealed from the denial of PCRA relief. In response, the DAO agreed that his claim regarding counsel's failure to present evidence of organic brain damage was valid and conceded relief. *Brief for Appellee, Commonwealth v. Brown*, 728 CAP, at 15. The DAO also argued that it had the discretion to seek death penalty relief without showing a constitutional or statutory violation, but the Court rejected that claim, stating that once there is a final judgment in a criminal case, relief is proper only after an independent review by the courts. *Brown, supra,* 196 A.3d at 144. On the merits, the Court affirmed the PCRA court's ruling denying relief on this claim, determining that trial counsel had reasonably relied on their expert's opinion and could not be ineffective for having done so. *Id.* 196 A.3d at 154.

### d. *Brown's habeas corpus petition*

During the state court collateral review proceedings, Brown also had an open habeas corpus petition. *Brown v. Smeal*, 10-cv-553. On May 28, 2021, after the Supreme Court affirmed the denial of the PCRA petition, the DAO's Federal

---

[16] As the Supreme Court has recognized, brain damage can be a mitigating circumstance. *See, e.g.,* Williams v. Taylor, 529 U.S. 362, 370 (2000); Tennard v. Dretke, 542 U.S. 274, 288 (2004); Porter v. McCollum, 558 U.S. 30, 36 (2009).

Litigation Unit and defense counsel filed a Joint Motion in federal court. Consistent with its state court assertion that defense counsel was ineffective at the penalty phase for failing to present evidence of organic brain damage, the DAO agreed that penalty phase relief was appropriate. *Id.* Doc. 33, at 9. The habeas court has not ruled on this joint motion and Brown's death sentence for the Crawford murder remains in place.

### e. *Brown's new PCRA petition*

Based upon Judge Bronson's decision awarding him a new trial for the RiteAid murder (Case 1), Brown filed a new PCRA petition with reference to the Crawford murder. Among other guilt phase claims, he argued for penalty phase relief, because the now-vacated RiteAid conviction had been used to establish the prior murder aggravator at his penalty hearing. In response, as Mr. George has accurately referenced, since the jury found two aggravators and no mitigators, as a matter of law, even if the Supreme Court affirms Judge Bronson's decision ordering a new RiteAid trial, and even if that new trial resulted in an acquittal, there would still be one aggravator and no mitigators, necessitating a death sentence for the Crawford murder. Therefore, there is no validity to the claim that the DAO agreed to relief in the RiteAid case to undermine Brown's death sentence.

Accordingly, as Mr. George has accurately explained, the DAO does not agree to relief regardless of the claim. As with the *Reid* cases, where the DAO had determined that a claim is meritorious, it has so informed the court. Consistent with that approach, it has agreed to relief in both state and federal proceedings based on Brown's brain damage claim but *opposed* relief on his meritless RiteAid claim. The critical point in this disciplinary matter is that even if Judge Bronson's grant of a new trial is upheld by the Supreme Court, that ruling would not provide any independent grounds to separately attack the death verdict in Case 2, because the jury found another statutory aggravator, danger to others, and no mitigators.

The bottom line is that the DAO position opposing death penalty relief in the state post-conviction proceedings based on the reversal by Judge Bronson of Brown's murder conviction in Case 1 does not conflict with the position it has taken, and has always taken, with respect to the claim of ineffective failure to properly present organic brain damage in federal habeas corpus court. There is nothing in the *Brown* litigation, including the King's Bench proceedings, to suggest any wrongdoing by the DAO, much less by Paul George, who has opposed Brown's death penalty claim in PCRA proceedings on the ground that that the

death sentence is not impacted, even if the grant of a new trial in Case 1 is affirmed by the Supreme Court.[17]

### D.    Commonwealth v. Darien Houser

Houser was convicted of murdering Judicial Warrant Officer Joseph LeClaire, who was attempting to serve Houser with a bench warrant. At the PCRA stage, Houser argued that the § 9711(d)(1) aggravator—addressing cases where a law enforcement officer has been killed in the line of duty—should not apply to the murder of Warrant Officer LeClaire.  In its Response to this claim, Mr. George successfully argued that the § 9711(d)(1) aggravator did apply to this case. *Commonwealth's Response to Ineffectiveness Claim Regarding the § 9711(d)(1) Aggravating Factor* (8/6/19), CP-51=CR-0605181-2004. The court agreed with the Commonwealth and denied the claim.

In a later PCRA petition, Houser claimed ineffectiveness of counsel at both the guilt and penalty phases. After consideration of those separate claims, the DAO conceded relief on the penalty phase, on a determination that the new claim of

---

[17] Mr. George has properly interpreted the central holdings of the  Supreme Court ruling in *Commonwealth v. Brown,* 196 A.3d 130, 146  (Pa. 2018): first, the Court rejected the DAO argument that it had the authority to concede death penalty relief for any reason, and that death penalty relief could only be granted on a concession by the Commonwealth based on an independent review of the record by the Court; second, the Court did not mandate an evidentiary hearing or appointment of amicus to conduct this independent review.

ineffectiveness was meritorious but continued to oppose relief with respect to Houser's guilt phase claims. This PCRA petition is pending in state court.

### E.    Commonwealth v. Lenwood Mason

In this case, the Pennsylvania Supreme Court remanded Mason's matter to the PCRA court for a determination of whether Mason was ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). During the preceding PCRA proceedings, counsel for Mason had raised the *Atkins* claim, but over counsel's objection, the PCRA court had granted Mason's *pro se* motion to withdraw that claim.

In its remand order, the Supreme Court directed the PCRA court to either address the merits of the *Atkins* claim, or conduct a competency exam for Mason, to determine whether he could represent himself and withdraw that claim. *Commonwealth v. Mason*, 130 A.3d 601, 671 (Pa. 2015). Only four Justices considered this appeal. Three Justices voted for affirmance on all issues other than the *Atkins* claims. Justice Saylor would have granted penalty phase relief based on counsel's ineffective assistance in presenting evidence of Mason's borderline intellectual disability. *Mason*, 130 A.3d at 675.

On remand, Mason passed his competency exam and elected to proceed *pro se*, after which he withdrew the *Atkins* claim and raised a number of new post-conviction claims not covered by the Supreme Court's remand order. In response

to Mason's ensuing appeal from the PCRA court's denial of these new claims, the DAO filed a Brief for Appellee successfully arguing that Mason was not entitled to relief on any of these waived claims. *See Brief for Appellee*, No. 759 CAP (5/22/18) 2018 WL 4559963; *see also Commonwealth v. Mason*, 196 A.3d 125 (Pa. 2018) (Per Curiam Order affirming denial of relief).

Thereafter, at the ensuing habeas proceedings, the DAO conceded relief on the same ineffectiveness grounds identified by Justice Saylor. *Mason v. Wetzel*, 17-cv-3759, Document 31 (8/7/18).

## APPENDIX 2

### Representative Open File Review Cases

The following is a representative list of cases in which the DAO's open-file review process revealed new and/or previously suppressed information that ultimately led to post-conviction or habeas relief and/or exoneration.

**Tyree Musier** CP-51-CR-15455-2008.
Open-file discovery led to discovery of a former co-defendant's jail calls in which he all-but confesses to the shooting Musier was convicted of committing. His conviction was vacated, August 21, 2025, and charges dismissed, and Mr. Musier released from prison on September 16, 2025.

**William Johnson** (E.D. Pa., No. 12-5156 (habeas); CP-51-CR-1202272- 2005 (nolle pros)).
Open-file discovery revealed evidence of coercion of the main Commonwealth witness, including her letter of complaint of detective's coercion.

**Mumin Slaughter**
Co-defendant of William Johson (above); PCRA granted June 17, 2024, on same *Brady* claim that resulted in the relief granted to William Johnson.

**Curtis Crosland** (E.D. Pa., No. 21-476, habeas; CP-51-CR-0132641-1988, nolle pros)
Open-file policy revealed alternative suspects in the Police Department's Homicide file, as well as grand jury testimony revealing a Commonwealth witness was incredible and had lied to police in a related investigation.

**Kareem Eaddy** (E.D. Pa. No. 19-450, habeas); CP-51-CR-0005131-2009)
After investigation, main prosecution witness reported that she never gave a statement to Detective Dove and that he fabricated it and forged her signature. Handwriting comparison done by DAO shows that witness signature appears to match Dove's handwriting from other case documents (found through open-file discovery).

**Wayne Smith** (CP-51-11844-2010)
Open-file discovery revealed trove of mental health records casting doubt on the only witness's reliability during the time of trial.

- 54 -

**Hakeem Moore** (CP-51-CR-0004439-2008; No. 21-cv-2303 (E.D. Pa.))
Open-file discovery revealed an alternate suspect who was not investigated even when he was identified by narcotics officers of having ties to a likely drug-related murder of Jonathan James, of which Moore was convicted. The same discovery revealed that nine weeks before the alternative suspect was identified, the DAO granted the alternate suspect immunity from prosecution for another drug-related murder that occurred blocks away.

**David Taylor** (CP 51-CR-1009451 (2001)) and **Keith Graves** (CP 17-CR-1009412 (2001))
Open file policy and CIU investigation revealed evidence of the actual perpetrator of a bar robbery and led directly to a confession of that person with facts not publicly known, PCRA petition granted, and charges dismissed.

**Bruce Murray & Gregory Holden** (E.D. Pa. Nos. 2:98-cv-5866, 2:06-cv-5202)
Open-file discovery revealed documentation that a juvenile eyewitness to the shooting of which Murray and Holden were convicted had provided information inconsistent with the prosecution theory of the case, as well as additional witnesses who told a different story.

**Steven Lazar** (No. 2:14-cv-6907 E.D. Pa)
Open-file discovery revealed documentation of police knowledge of alternative suspects with motives to harm the victim, among other things.

**Walter Ogrod** (CP-51-CR-0532781-1992)
Open-file discovery revealed, among other things, documents showing that the murder victim had been killed in a different manner from that described in a confession attributed to Mr. Ogrod.

**Andrew Swainson (**CP-51-CR-0431311-1988 (PCRA and nolle pros).
The Commonwealth conceded that the conviction should be overturned based on undisclosed *Brady* information in prosecution file. This included activity sheets that show police knew Swainson had not fled the jurisdiction as they claimed at trial and which referenced an alternative suspect was charged with a separate homicide and fit the profile of someone who robbed drug houses).  See Ans. to Am. Pet. for PCRA Relief, ¶ 130; Joint Stipulation of Fact, filed 2/12/2020.

**Daniel Gwynn** (No. 08-5061)

Open-file discovery revealed a compelling alternative suspect involved with the Commonwealth's two main witnesses and evidence that the photo array used to initially identify Gwynn did not actually contain his photograph.