**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN THE MATTER OF          :
PAUL M. GEORGE         :       MISC. No. 22-mc-50

**DISCIPLINARY COUNSEL'S REPLY TO**
**MR. GEORGE'S OBJECTIONS TO THE PANEL'S REPORT**

Mr. George argues that he cannot be held to have violated either Rule 3.1[1] or 3.3 because he did not "knowingly or intentionally" mislead the District Court when he told it that the District Attorney's Office had decided to concede on Mr. Wharton's remaining habeas claim only after it had conducted a careful review of the facts and the law applicable to the claim and that the Court could and should rely on what his office had done. In truth, the Office had not conducted a careful review of the facts and the law applicable to Mr. Wharton's remaining claim and Mr. George, who was effectively in charge of that review, knew that.

---

[1] With respect to Rule 3.1, Mr. George appears to believe that he is immune from any liability for his misstatements because they were made in support of Mr. Wharton's underlying assertion that his counsel had been ineffective and that claim, even if not meritorious, was not "frivolous." Disciplinary Counsel has not taken a position on whether Mr. Wharton's *Strickland* claim was frivolous; that was not at issue in this disciplinary proceeding. The question presented here is not whether the District Attorney's Office, after having conducted a purported careful review of the facts and the law applicable to that claim, could have come to the conclusion that Mr. Wharton was right, it is whether it could properly tell the District Court that the Office had conducted a "careful review" of the facts and law even though it had not done so and whether it could make such a misleading statement while urging the Court to rely on the Office's supposedly careful review. Rule 3.1 covers not only the bringing or defense of a claim, but also the assertion or contravention of an issue therein. Whether the Court could or should proceed with an independent de novo hearing on remand was such an issue and the District Attorney's Office's false assertion that the Court did not need to do so because it could defer to what the Office had already done was a violation of Rule 3.1 as well as Rule 3.3.

1

Mr. George also says that any violation of the Rules must be shown by clear and convincing evidence.  That proposition can be questioned,[2] but whatever standard the Court chooses to apply, there is no real dispute about any of the following facts:

1.    The only remaining habeas claim in Mr. Wharton's case after the Court of Appeals remanded it to the District Court was whether Mr. Wharton's counsel had been ineffective because he had failed to introduce evidence of Mr. Wharton's adjustment to prison as a mitigating factor for the jury to evaluate in considering the imposition of the death penalty.

2.    In order to determine the merits of this one remaining claim, the Court of Appeals directed the District Court to consider, on remand, not only whatever mitigation evidence had gone unmentioned in the first instance, but also to take into account whatever anti-mitigation evidence the Commonwealth would have presented to rebut Mr. Wharton's mitigation argument.

3.    When deciding to concede on the merits of Mr. Wharton's claim, the District Attorney's Office's Capital Case Review Committee considered mitigation evidence that Mr. Wharton could offer in support of his claim but did not consider any of the anti-mitigation

---

[2] Under Pennsylvania law, Disciplinary Counsel has the burden to prove that an attorney's actions constitute professional misconduct by a preponderance of the evidence, and must establish its burden with "clear and satisfactory evidence." *Office of Disciplinary Counsel v. Surrick*, 749 A.2d 441, 444 (Pa. 2000) (citing *Office of Disciplinary Counsel v. Duffield*, 644 A.2d 1186 (Pa. 1994)).  In disciplinary proceedings where, as here, the conduct at issue centers on a respondent making untrue statements, "Disciplinary Counsel can meet this burden by presenting documentary evidence or testimony from the persons at whom the allegations were aimed that the statements are false." *Id.* (citing *Office of Disciplinary Counsel v. Price*, 732 A.2d 599 (Pa. 1999)).  "The burden then shifts to respondent to establish that the allegations are true or that following a reasonably diligent inquiry, he [or she] had formed an objective reasonable belief that the allegations were true." *Id.*  Accordingly, where the basis of the charge is allegedly untrue statements, a determination of attorney misconduct "hinges upon whether respondent acted recklessly or with the support of a reasonable factual basis." *Id.*  This requirement is met where the misrepresentation is knowingly made, or where it is made with reckless ignorance of the truth or falsity thereof.  *See id.*; *Office of Disciplinary Counsel v. Anonymous Attorney A*, 714 A.2d 402, 406 (Pa. 1998); *see also Price*, 732 A.2d 599, at 604 (noting recklessness is an objective standard).

evidence that the Commonwealth could offer to rebut that claim.

4. Prior to conceding the merits of Mr. Wharton's "adjustment to prison" argument, no one at the District Attorney's Office had actually researched Mr. Wharton's prison record in order to determine what that record was.

5. In conceding the merits of Mr. Wharton's "adjustment to prison" claim, the District Attorney's Office told the District Court that it was doing so only after a careful review of the facts and the law applicable to the claim and that the District Court could and should defer to that careful review rather than proceeding to conduct its own independent hearing on the facts and law applicable to Mr. Wharton's claim.

6. The District Attorney's Office did not tell the District Court that it had neither researched nor considered whatever anti-mitigation evidence might be available to rebut Mr. Wharton's claim.

Whatever standard the Court deems applicable—whether "clear and convincing" or "preponderance of the evidence"—all of these facts are what they are. There is no evidence to the contrary.

As for Mr. George's argument that—notwithstanding these facts—he did not "intentionally" mislead the Court, the word that is actually used in Rule 3.3 (and elsewhere) is "knowingly." And in determining whether a misrepresentation is made "knowingly," Comment 3 to Rule 3.3 draws a distinction regarding certain kinds of representations made by a lawyer:

> An advocate is responsible for pleadings and documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone in the client's behalf, and not an assertion by the lawyer. Compare Rule 3.1. However, an assertion *purporting to be on the lawyer's own knowledge*, as in an affidavit by the lawyer or in a statement in open court, *may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.* There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation.

The applicability of Comment 3 to Mr. George's misrepresentations in this case should be obvious. The representations in question were not about what some party or witness had said or done; they were about what the lawyers making the representations had said or done. Respondents told the District Court that their Office had decided to concede on Mr. Wharton's case only after they—the Respondents—had undertaken a careful review of the facts and the law applicable to the question to be decided. They also said that their Office had communicated with the victims' family prior to reaching the decision to concede. These were not representations about Mr. Wharton or his conduct—they were representations about what Respondents themselves had done. And they were representations made in an effort to persuade the Court that it did not need to conduct an evidentiary hearing because it could rely on the "careful review of the facts and law" that Respondents had themselves conducted. But Respondents hadn't conducted a "careful review." Indeed, they had not even looked to see whether there was any anti-mitigation evidence on Mr. Wharton's prison record. Their statements to the Court were false and were made without conducting a reasonable (or indeed any) inquiry into their basis in fact. With regard to representations of this kind, it is not sufficient to say "I didn't know what the truth was" if you never conducted a reasonably diligent inquiry to find out. Whatever Mr. George knew—and Disciplinary Counsel respectfully suggests he knew all 6 of the facts set forth at the beginning of this Reply—he and his Office certainly failed to conduct the kind of reasonably diligent inquiry they were expected to conduct in order to comply with the Disciplinary Rules and the applicable law.[3]

---

[3] Like much of Mr. George's testimony at the hearing, Mr. George's Objections make a tortured argument based on supposed examples of his Office's occasional decisions *not* to concede the death penalty in cases where the petitioner had no plausible basis for obtaining that relief. But all these examples are illusory. In dealing with petitioners in such circumstances, the Office's practice is evidently to wait until the petitioner is able to challenge the imposition of the death penalty in a

Mr. George suggests that this Court can only find an ethical violation here if it also determines that Respondent intentionally misled the District Court. That is incorrect. Here, the applicable standard is at most recklessness. That is because the basis of the charge is the false statement that the concession was made, and that the proposed order was offered, after a "careful review." Whether making that false statement to the District Court constitutes an ethical violation "hinges upon whether respondent acted recklessly or with the support of a reasonable factual basis." *Price*, 732 A.2d at 603. It is not necessary to prove whether Mr. George had any specific intent to mislead the District Court. In examining a respondent's asserted belief regarding the truth of statements he or she made, Pennsylvania applies an objective standard. *Id.* at 604 (rejecting respondent's argument that the Office of Disciplinary Counsel must prove respondent acted with purposeful intent, "find[ing] that an objective standard, which examines the factual basis for the assertion, is necessary to protect the public, the profession and the courts."). And it makes no difference whether Mr. George actually knew about undisclosed anti-mitigation evidence, e.g., escape attempts. It is undisputed that no "careful review" occurred. The statement that it did was false. "Recklessness is shown by 'the deliberate closing of one's eyes to facts that one had a duty to see or stating as fact, things of which one was ignorant.'" *Id.* (citing *Anonymous Attorney A*, 714 A.2d at 407). At best, Mr. George's eyes were deliberately closed to the fact that no careful review had been done, and that a careful review was not the basis of the concession.

---

different proceeding and then to concede the point in that proceeding. Mr. George (or his counsel) seems to believe that these examples show that Mr. George and/or his Office do not have a practice or policy of conceding death penalty relief. Disciplinary Counsel believes that the actual record of concessions with respect to these petitioners actually tends to prove that the Office's practice and/or policy is what Disciplinary Counsel said it was in paragraphs 38-30 of the Rule to Show Cause. That being the case—and the proffered examples having been covered at length during the hearing before the Panel—it is unnecessary to review the history of each in this Reply.

Mr. George also devotes a considerable portion of his objections to various assertions about (1) death penalty concessions made by "prior" District Attorney's Offices—which is to say by District Attorneys who preceded Mr. Krasner and/or (2) grants of relief on other death sentence challenges by other courts in other cases. With all due respect, Disciplinary Counsel doesn't know what this argument is about. No one has ever contended that the District Attorney's should refuse to concede on a death penalty claim if that claim is meritorious. It is true that Mr. Krasner's predecessors sometimes made concessions in death penalty cases. Mr. Krasner's predecessors were presumably honest lawyers who took their responsibilities seriously. Their willingness to concede a point when they concluded that a given petitioner was in the right is to their credit. Mr. Krasner's office is different. When it comes to the death penalty, it is on the petitioner's side without reference to the merits of the case because it believes the death penalty is always wrong and never appropriate. This is why, as the Court of Appeals noted, the "adversarial system broke down" in this case. The District Attorney's Office had "joined forces" with the Petitioner. *Wharton v. Graterford,* 95 F.4th 113, 125 (3d Cir. 2024). The District Attorney's Office was not interested in conducting a careful review of the facts or the applicable law—and it didn't do so. The fact that other District Attorneys or Courts have done what they are supposed to do in other cases is not a defense for what this District Attorney's Office did in this case. The argument makes no sense.

Finally, at various times in the course of these proceedings, Mr. George (and his counsel) have attempted to offer certain explanations about why he did what he did. In particular, they have argued (1) that the Court of Appeals expected that the review on remand of whatever anti-mitigation evidence that the Commonwealth could have used to rebut Mr. Wharton's mitigation evidence would be confined to whatever evidence had been introduced in prior proceedings and (2) they had no reason to check Mr. Wharton's actual prison record because if there was

6

anything in there that would have helped the prosecution, Respondents' "zealous" predecessors would have used it in prior proceedings.

The answer to the first point is that the Court of Appeals has held that that is not what its previous order said and that it had no such expectation; rather, it stated just the opposite:

> "Appellants also say they 'carefully reviewed the facts' already in the record, and that was enough. Often, on habeas, reviewing the existing record will suffice. But not here. Our order remanding this case directed the parties to look beyond the record. To gauge whether defense counsel's performance affected the outcome, we instructed: "[W]e must reconstruct the record and assess it anew. In so doing, we cannot merely consider the mitigation evidence that went unmentioned in the first instance; we must also take account of the anti- mitigation evidence that the Commonwealth would have presented to rebut the petitioner's mitigation testimony."

*Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 149 (2024) (quoting *Wharton v. Vaughn*, 722 F. App'x 268, 282–83 (3d Cir. 2018)). Indeed, if the record on the question were closed, there would have been no reason for a remand. The Court of Appeals could have decided the question on the existing record.[4]

The answer to the second point is that even if Mr. George's predecessors were more "zealous" than Respondents, the Court of Appeals expected the District Court to consider on remand whatever anti-mitigation evidence the Commonwealth had available to it if it chose to contest Mr. Wharton's mitigation claim. Mr. George's own lack of zeal does not excuse the failure to check Mr. Wharton's actual prison record, nor can Mr. Wharton's violent escape attempt be considered "immaterial" when the District Court, once it was told about it, found it to be not only material but even dispositive of the question presented to it on remand. *See Wharton v. Vaughn*, 2022 WL 1488038, at *16 (E.D. Pa. May 11, 2022) (denying *Strickland* claim "[g]iven 'the overwhelming aggravating factors,' and the fact that Wharton's multiple efforts to

---

[4] It is also worth noting that the summary of the case submitted to the Office's Capital Case Review Committee did not include any anti-mitigation evidence whether in or outside of the existing record.

7

escape would have rebutted any mitigation based on Wharton's adjustment to prison"), *aff'd sub nom. Wharton v. Superintendent Graterford SCI*, 95 F.4th 113 (3d Cir. 2024); *see also Wharton v. Vaughn*, 2022 WL 4133291, at *6 (E.D. Pa. Sept. 12, 2022), *aff'd sub nom. Wharton*, 95 F.4th at 140.  Respondents' predecessors made their litigation decisions in different proceedings while making different arguments.

Mr. George's remaining arguments are outside the scope of Disciplinary Counsel's assignment.  Disciplinary Counsel respectfully submits that a violation of Rules 3.1 and 3.3 has been proven in this case. It is for the Court, not Disciplinary Counsel, to determine what sanction, if any, is appropriate and Disciplinary Counsel has taken no position on that subject.  As for the suggestion that the members of the Panel that heard the case should not participate in the full Court's deciding of that case, Disciplinary Counsel does not believe (on the basis of experience in some previous cases) that that is the standard practice of the Court, nor does he understand why anyone would think it would be.  But that too is up to the Court to decide.

<div style="margin-left: 50%;">

Respectfully submitted,

/s/ Alfred W. Putnam, Jr.
Alfred W. Putnam, Jr.
Renée M. Dudek
**FAEGRE DRINKER BIDDLE & REATH LLP**
One Logan Square, Suite 2000
Philadelphia, PA  19103
(215) 988-2700 (telephone)
(215) 988-2757 (facsimile)
alfred.putnam@faegredrinker.com
renee.dudek@faegredrinker.com

</div>

Dated:  October 7, 2025

## CERTIFICATE OF SERVICE

I, Alfred W. Putnam, Jr. certify that I caused a copy of the above document to be served via email on Respondent's counsel on October 7, 2025.

/s/ Alfred W. Putnam, Jr.
Alfred W. Putnam, Jr.
Renée M. Dudek
**FAEGRE DRINKER BIDDLE & REATH LLP**
One Logan Square, Suite 2000 Philadelphia,
PA 19103
(215) 988-2700 (telephone)
(215) 988-2757 (facsimile)
alfred.putnam@faegredrinker.com
renee.dudek@faegredrinker.com